MAREN G. TORGERSON and John J. Stendal, the Guardian ad Litem of Lief Torgerson, Martin R. Torgerson, Regina O. Torgerson, and Andrea Breta Florence Torgerson, Minors, v. BRITHA HAUGE, Lief Torgerson, John T. Hauge, Martha O. Fundingsland, Torger T. Hauge, Britha Olson, and Karina Alveshere.

(159 N. W. 6.)

The parents of Andrew Torgerson entered into an oral understanding with him in 1839, whereby he should reside with and care for them during their lives, and should receive their property. They executed and delivered to him their joint written will constituting him sole devisee of all their property. Andrew purchased an adjoining quarter, sold his own homestead in another county, and for fifteen years lived with his parents.

Andrew died in June, 1914; the father in October following, at the age of seventy-four years. The mother was seventy-four years old at the time of the trial. Andrew leaves a widow and four minor children. Surviving him are these defendants, his four brothers and sisters and his mother. Six weeks after the death of Andrew, his brothers and sisters procured the aged and

---

Note.—Cases discussing the right to change a will as affected by contract are collected in a note in 14 L.R.A. 861, in which it appears, as in the case above, that a will based on a valuable consideration, giving the whole of the property of the testator to certain beneficiaries, to whom it is delivered, is irrevocable.

On agreements to make particular dispositions of property by will and the mode of their enforcement, see note in 66 Am. Dec. 784.

enfeebled father and mother to make another will, revoking the former one and dividing all their property between themselves and the heirs of Andrew, one fifth to each. The parents then leave and reside with the defendants. Andrew's widow protests and offers to continue to support and care for them.

The children of Andrew herein seek to enjoin the probate of the second will and maintain the *status quo* during the lifetime of the mother; and to define the estate of the minors in the real property and declare their interest therein a trust upon the fee thereof to be subsequently perfected by the probate of the first will or proceedings in equity; and to annul any pretended interest of the defendants under the purported second will and to make suitable provisions meanwhile for the maintenance and care of the mother out of said homestead premises, title to which was acquired by final proof years ago, but subsequent to the delivery of the first will.

**Wills — contractual — testamentary — contractual features — revocation — not permitted — consent of beneficiaries — without — executed —equity.**

1. *Held:* A will executed under such an agreement is both contractual and testamentary. Its contractual features cannot be later revoked by the testators without the consent of the beneficiaries where executed, and where equity should enforce its provisions.

**Contract — substantially performed — equity — relief — specific — performance — trust — heirs — transferee — devisee.**

2. Under the facts this contract under which said will was executed and delivered was substantially performed, and to such an extent that equity will grant relief equivalent to specific performance and fasten a trust upon the property for the benefit of the heirs of the beneficiary under the contract, as against any transferee or devisee.

**Will — recognized in equity — contract — as part performance — enforceable contract.**

3. A will so executed will be recognized in equity as a part performance of the contract and becomes itself in its contractual features an enforceable contract.

**Government homestead — title to — testator — final proof — not made — will — at time of — immaterial.**

4. That the title to the government homestead had not been vested by final proof in the testator when said will and contract was made was immaterial where subsequently made.

**Contract — transfer — will — Federal statutes.**

5. Such a contract for transfer and will executed thereunder is not a violation of, but instead is provided for and recognized by, U. S. Rev. Stat. § 2291.

**Mother of beneficiary — will — joining in — acquiesced in for years — contract — benefits under — homestead rights — equitable provision — maintenance — possession — to heirs of beneficiary.**

6. The mother of Andrew having joined in the will and acquiesced for years in the benefits under the contract, no homestead rights of hers are violated by equitable provision for her maintenance from said property or its proceeds. Equity has power under such circumstances to award possession as against her to the heirs of Andrew, where ample provision for her maintenance is made, and she refuses to remain with them upon said premises.

**Widow of beneficiary — rights of — waived — children.**

7. No rights of the widow of Andrew are involved, she having formally waived any right in said premises to and in favor of her children, these plaintiffs.

Opinion filed July 21, 1916. Rehearing denied August 16, 1916.

Defendants appeal from District Court, Wells County, *Coffey,* Judge, demanding trial *de novo.*

Affirmed.

*B. F. Whipple* and *J. J. Youngblood,* for appellants.

An unproved homestead is not devisable by will or contract. The Federal statutes have limited the power of the entryman to alienate his homestead to a few specific cases, the chief of which are for roads, schools, and irrigation purposes. Such statutes are strictly construed. Sutphen v. Sutphen, 30 Kan. 510, 2 Pac. 100; Wood v. Noel, 116 La. 516, 40 So. 857; Ford v. Ford, 24 S. D. 644, 124 N. W. 1108; Cascade Public Service Corp. v. Railsback, 59 Wash. 376, 109 Pac. 1062; Tait v. New York L. Ins. Co. 1 Flipp. 288, Fed. Cas. No. 13,726; Siegel, C. & Co. v. Eaton & P. Co. 165 Ill. 550, 46 N. E. 449.

Assuming the contract to have been fully established, the plaintiffs cannot maintain their action for specific performance because the contract has not been completed. If there was ever a valid agreement, it was extinguished by the death of Andrew Torgerson, the beneficiary, before the death of his father. Cox v. Cox, 26 Gratt. 305; Snyder v. Snyder, 77 Wis. 95, 45 N. W. 818; Bourget v. Monroe, 58 Mich. 563, 25 N. W. 514; Adams, Eq. p. 252, *82; Benedict v. Lynch, 1 Johns. Ch. 370, 7 Am. Dec. 484.

A court of equity cannot enforce a contract specifically unless it can be done mutually and completely, and so as to secure substantially, be-

yond question, all that the parties contemplate. If this is impracticable, the remedy, if any exists, is to be found elsewhere. Buck v. Smith, 29 Mich. 166, 18 Am. Rep. 84; Blanchard v. Detroit, L. & L. M. R. Co. 31 Mich. 52, 18 Am. Rep. 142; Rust v. Conrad, 47 Mich. 449, 41 Am. Rep. 720, 11 N. W. 265; Bumpus v. Bumpus, 53 Mich. 346, 19 N. W. 29; Wright v. Wright, 31 Mich. 380; Roberts v. Kelsey, 38 Mich. 602.

Equity will never compel performance by one party when there can be no certainty that the other party ever intends to carry out the promises made by him. O'Brien v. Perry, 130 Cal. 528, 62 Pac. 927; Civ. Code § 3390; Hayden v. Collins, 1 Cal. App. 259, 81 Pac. 1120; Prusiecke v. Ramzinski, — Tex. Civ. App. —, 81 S. W. 771; Ikerd v. Beavers, 106 Ind. 483, 7 N. E. 328; 40 Cyc. 1067.

*H. J. Bessesen, John O. Hanchett,* and *J. L. Johnson,* for respondents.

The law and the decisions uphold the validity of a mortgage executed by a homestead entryman prior to proof and patent, where the entryman thereafter perfects his title and obtains patent to the land. Adam v. McClintock, 21 N. D. 483, 131 N. W. 394; Martin v. Yager, 30 N. D. 577, 153 N. W. 286; Holtan v. Beck, 20 N. D. 5, 125 N. W. 1048; Sutphen v. Sutphen, 30 Kan. 510, 2 Pac. 100; Engholm v. Ekrem, 18 N. D. 185, 119 N. W. 35; Teske v. Dittberner, 70 Neb. 544, 113 Am. St. Rep. 802, 98 N. W. 57; Svanburg v. Fosseen, 75 Minn. 350, 43 L.R.A. 427, 74 Am. St. Rep. 490, 78 N. W. 4.

Where a man has given up his inherent right to establish and build a home for himself and family elsewhere, and has, pursuant to a contract, occupied, and for many years improved, a tract of land belonging to another, under an agreement to convey it to him by deed or devise it to him by will, it is held that the law cannot place the parties *in statu quo;* that money damages will not suffice, and that it is such a case that the only adequate remedy is by action for specific performance in a court of equity, and that such court, under such circumstances, will always decree specific performance. Bird v. Pope, 73 Mich. 483, 41 N. W. 514; Young v. Young, 45 N. J. Eq. 27, 16 Atl. 921; Svanburg v. Fosseen, 75 Minn. 350, 43 L.R.A. 427, 74 Am. St. Rep. 490, 78 N. W. 4; Teske v. Dittberner, 70 Neb. 544, 113 Am. St. Rep. 802, 98 N. W. 57.

The homestead estate can be lost by both husband and wife by aban-

donment or by estoppel *in pais,* the same as any other interest in or title to real property. Engholm v. Ekrem, 18 N. D. 185, 119 N. W. 35; Ferris v. Jensen, 16 N. D. 466, 114 N. W. 372.

The doctrine of equitable estoppel by conduct applies as against married women the same as against all persons *sui juris.* Bird v. Pope, 73 Mich. 483, 41 N. W. 514; Baker v. Syfritt, 147 Iowa, 49, 125 N. W. 998; Teske v. Dittberner, 70 Neb. 544, 113 Am. St. Rep. 802, 98 N. W. 57; Best v. Gralapp, 69 Neb. 811, 96 N. W. 641, 99 N. W. 837, 5 Ann. Cas. 464; Kofka v. Rosicky, 41 Neb. 328, 25 L.R.A. 207, 43 Am. St. Rep. 685, 59 N. W. 788.

"Such an agreement may be indirectly enforced during the promisor's lifetime by a decree canceling a conveyance made by him to another in violation of the agreement, or a decree that the grantor in such conveyance hold the title in trust subject to the purposes of the agreement; by an injunction against conveying the property or making a will in violation of the agreement; or that grantee hold the property in trust during his lifetime with remainder in fee to the complainant or his heirs; or that on performance or readiness to perform by plaintiff he will be entitled to the land on the death of the promisor." 36 Cyc. 738, ¶ 4; Svanburg v. Fosseen, 75 Minn. 350, 43 L.R.A. 427, 74 Am. St. Rep. 490, 78 N. W. 4; Owens v. McNally, 113 Cal. 444, 33 L.R.A. 369, 45 Pac. 711; Cox v. Cox, 26 Gratt. 305; Snyder v. Snyder, 77 Wis. 95, 45 N. W. 818; Bourget v. Monroe, 58 Mich. 563, 25 N. W. 514.

The heirs of Andrew Torgerson succeeded to the equitable estate which he had in the property during his lifetime, burdened with the fulfilment of the contract he had made, and which he had executed as far as possible. Young v. Young, 45 N. J. Eq. 27, 16 Atl. 921; France v. France, 8 N. J. Eq. 650; Van Duyne v. Vreeland, 11 N. J. Eq. 370, 12 N. J. Eq. 142; Davison v. Davison, 13 N. J. Eq. 246; Pom. Spec. Perf. of Contr. p. 104; 2 Story, Eq. Jur. §§ 759, 761; Fry, Spec. Perf. 174; Wallace v. Brown, 10 N. J. Eq. 308; Cooper v. Carlisle, 17 N. J. Eq. 529; Eyre v. Eyre, 19 N. J. Eq. 102; Green v. Richards, 23 N. J. Eq. 33; Dean v. Anderson, 34 N. J. Eq. 500; Haughwout v. Murphy, 22 N. J. Eq. 531.

Goss, J. The quarter section, the subject matter of this suit, was the government homestead of Torger J. Hauge. It is the southwest quarter of 6, township 149 north of range 71 west, and within Wells county. Torger Hauge made proof thereon in 1902. Britha Hauge, now his widow, is still living. Their children were the defendants other than the widow appellant, and also their youngest son, Andrew Torgerson. The plaintiffs are his children suing by guardian the mother and the brothers and sisters of their father, Andrew Torgerson. Both Andrew Torgerson and his father, Torger J. Hauge, are dead. The son died from tuberculosis June 5, 1914, after a lingering illness. His father, Torger J. Hauge, died in October following.

In 1899 Torger J. Hauge and his wife were living upon this tract as their unproven government homestead. Andrew Torgerson, their youngest son, unmarried, was residing upon a government homestead near Balfour. The other four children of Torger and wife had married and had left the parental roof. In 1889 the father and mother entered into an arrangement with Andrew that he should return to their home, reside with and care for them for the balance of their lives, and should receive therefor all their property, including their unproven homestead, upon the death of both of them. Andrew thereupon made commutation proof upon his homestead near Balfour and sold it, realizing some $1,500 net from its sale. He immediately returned to the home of his parents, purchasing a quarter of school land adjoining, and making the first payments thereon to the state with a portion of the proceeds from the sale of his homestead. He took possession of all personalty on the father's homestead and cropped it, taking those also. The father soon afterward, in 1902, made proof upon his homestead and patent therefor presumably has been issued. In 1899 the father's homestead was worth approximately $10 per acre. The buildings were of sod. Substantial frame buildings, consisting of a house worth twelve or fifteen hundred dollars, a large hip-roofed barn, worth from ten to twelve hundred dollars, and several other frame buildings, as granaries and the like, have been built upon the father's homestead by Andrew since his return. There is substantial proof that a portion of the proceeds from the son's homestead went into the frame house, the first building erected. The buildings and improvements, in the aggregate of the value of approximately $3,500, upon the father's homestead, were placed

there by Andrew from part of the proceeds of the sale of his homestead, but in larger part from the crops he had raised upon the land in question and the school quarter. All the buildings and improvements were placed upon the father's homestead, instead of upon the school land quarter, and during all the years from 1899 until Andrew's death he had resided thereon.

Andrew married in 1907, and he and his family, together with his father and mother, have always lived there. During all this time the old people had been well and comfortably cared for by the son and his wife, and were apparently well satisfied during these fifteen years with their condition and with the performance of the agreement under which they were maintained. For some years before the son's death in 1914 he had been ailing, but no complaint has been made that during that time and up to his death the old people were not properly cared for. In fact, the contrary is the proof. During all this time peace and harmony prevailed, and at various times the old people have referred to the understanding with Andrew, and declared that his wife and children in case of his death should not be dispossessed, but should perform the contract the same as Andrew did when living, and receive the same benefits. They even consented to the giving of a deed for said purposes a few days before Andrew's death; but evidently for sentimental reasons such as the consideration for the feeling of the son during his last illness, they did not trouble themselves or him to make the transfer.

This original understanding or contract does not rest entirely in parol. Soon after the return of Andrew in 1899, and evidently to carry out the agreement and place it and the good faith of the parties beyond question for all time, the father and mother had a will prepared, and which they executed and attested in the presence of witnesses, and subsequently delivered to Andrew. In part, it reads: "We do hereby jointly and severally give, devise, and bequeath to our beloved son, Andrew Torgerson, all our estate whether held jointly or severally, of whatever name, title, or description, real, personal, or mixed. This will to become operative only upon the death of the survivor of us. We do hereby make, constitute, and appoint Andrew Torgerson the forenamed, sole executor of this last will and testament without being required to give bonds for the discharge of his trust as such executor." The possession of this will has been retained at all times by Andrew and since

his death by his widow or the plaintiffs. Its execution and delivery is admitted and also is established by the uncontroverted proof. Each and all of the defendants knew of its provisions and the arrangement under which the son Andrew, and later his wife, had occupied the premises in question and cared for and maintained the old people. As above stated, the son died first, and at a time when the father was very feeble and in poor health and needed continuous personal attention and care. At Andrew's death his widow was six months pregnant, and physically unable to render all the care to the aged parents of Andrew that was necessary, and was assisted by her sister and other hired help; and several times a week by another son, a brother of Andrew.

Some six weeks after Andrew's death, evidently under prearrangement for the purpose, but without informing Andrew's widow thereof until it occurred, a meeting of the surviving brothers and sisters of Andrew, the defendants in this action, took place at the home of the old people and the widow and children, at which time the father and mother were induced to make a second will, under the provisions of which the father's homestead, still standing of record in his name, was devised to all his children, share and share alike, devising to the three minor children of Andrew only a one-fifth share of this property. Its purpose was to disregard and annul the earlier will, and avoid any rights of the heirs of Andrew under it and the contract entered into in connection therewith and performed under for more than fifteen years. There is evidence in the record that the father and mother were reluctant to do this, but did it under the solicitation, if not under what amounted to the coercion and duress, of their other four surviving children, these defendants. There is evidence from which to conclude that the old lady and her remaining children, defendants, desired to keep this property from Andrew's widow. And on the same day the aged couple were removed to the residence of one of the defendants. Andrew's widow, realizing the drift that matters were taking, offered to care for the father and mother that they might remain with her, and that she would give them a home and fulfil the contract years before entered into with Andrew and frequently referred to in conversation with her or in her presence. This, they refused to do. Subsequently the administrator of Andrew's estate made a similar offer, and also offered to contribute

a portion of the crops or a monthly allowance for their support, in the performance and fulfilment of said previously existing contract. But this was declined.

Soon afterwards the father died, being some seventy-four years old at the time of his death. The mother was seventy-four at date of trial. This action is brought by Andrew's children by guardians, to enforce said contract by having the property decreed to be held in trust by the mother for her support, but subject to the vested interests therein of the plaintiff's minor children and heirs of Andrew Torgerson, deceased, and that the probating of the second will as establishing title adverse to the interest of plaintiff be enjoined, and that the interests of the plaintiffs and the widow be defined and declared, and that the other defendants take nothing. At trial the widow of Andrew filed a waiver in favor of her four children of any interest she might have had in said property. The relief asked was granted by the lower court. From its decree the defendants appeal, demanding a trial *de novo*. On retrial the facts are found as heretofore set forth in this opinion.

The points argued in briefs will now be considered. It is asserted "that it was error to hold that plaintiffs have an estate and vested interest in said real property," and "to hold that prior to his death Torger J. Hauge held the legal title to said land in trust for Andrew's heirs," and "that plaintiffs are entitled to the use, occupation, and possession of said land," and defendants claim that the parents have never waived nor conveyed their homestead rights in said premises, and that the mother, Britha Hauge, "cannot be devested of the absolute use, occupation, and possession of said land by any substitution of other means for her care and support." It is undisputed that a will was made and delivered, and the status of the parties was accordingly changed for fifteen years to conform to and comply with the agreement, the terms of which were definite and specific. The will was executed under and in performance of the original contract and for a valuable consideration moving to the contracting parties, i. e., the value of the support, care, and maintenance of the aged couple, worth $300 per year under the proof, while the value of the crops and advantages to Andrew, present and prospective, was considerable.

"A will executed under an agreement founded upon a valuable consideration is contractual as well as testamentary. In the latter aspect

it may be revoked without the consent of the beneficiary, but not in the former." Syllabus in Nelson v. Schoonover, 89 Kan. 388, 131 Pac. 147. The opinion also has the following: "An agreement in writing made upon sufficient consideration, to devise real estate, is enforceable by specific performance against the heirs or devisees of the testator. Newton v. Lyon, 62 Kan. 306, 310, 62 Pac. 1000; Bless v. Blizzard, 86 Kan. 230, 120 Pac. 351; Dillon v. Gray, 87 Kan. 129, 123 Pac. 878; 30 Am. & Eng. Enc. Law, 621," also citing and quoting from 36 Cyc. 735, as follows: "An agreement to make a certain disposition of property by will is one which, strictly speaking, is not capable of a specific execution, yet it is within the jurisdiction of a court of equity to do what is equivalent to a specific performance of such an agreement. Such a contract is enforced after the death of the promisor by fastening a trust on the property in the hands of the heirs, devisees, and personal representatives and others holding the property with notice of the contract or as volunteers" 36 Cyc. 735.

"A will duly executed in pursuance of an agreement based upon a valuable consideration *becomes itself, in a sense, an enforceable contract.* The testator cannot by making a later will escape the obligation confirmed by the first one. 40 Cyc. 1068; Schouler, Wills, 3d. ed. § 452. The delivery of the will to the beneficiary has been treated as of importance in emphasizing the contractual feature of the transaction. 40 Cyc. 1068, note 2." Nelson v. Schoonover, 89 Kan. 388–392, 131 Pac. 147. "There is no dissent in the authorities from the proposition that one may make a valid contract with another to devise or bequeath property by his last will in a certain specified way." Morrison v. Land, 169 Cal. 580, 147 Pac. 259–261. An almost identical contract with this, except that the will had not been delivered to the beneficiary, was nevertheless enforced in like manner in Whitney v. Hay, 181 U. S. 77, 45 L. ed. 758, 21 Sup. Ct. Rep. 537, in an appeal from court of appeals of District of Columbia, in an opinion by Justice Harlan. Therein are found facts closely parallel to here. "His [plaintiffs] plans of life were materially altered in order that he might take care of Piper and wife during their respective lives. Piper put Hay in actual possession of the premises in question in execution of his agreement with Hay. But he failed to do that which was vital to Hay, namely, to put the absolute title to the property in him. Under all the circumstances, the

failure of Piper to invest Hay with the legal title was such a wrong to the latter as entitled him, under the established principles of equity, to the protection which would be given by a decree specifically declaring that the defendant holds the title in trust for him. We are of opinion that such relief is consistent with the objects intended to be subserved by the statute of frauds; for the decree in favor of Hay does not charge Piper upon his parol contract with him, but rests upon the equities arising out of the acts and conduct of the parties subsequent to the making of the original agreement."

Another closely analogous case is Baker v. Syfritt, 147 Iowa, 49, 125 N. W. 998, holding that "where the will has been made pursuant to a valid contract, testator cannot by the act of revocation escape the obligations of his contract, nor will his heirs take any advantage by such revocation," citing Robinson v. Mandell, 3 Cliff. 169, Fed. Cas. No. 11,959; Dufour v. Pereira, 1 Dick. 419, 21 Eng. Reprint, 332; Breathitt v. Whittaker, 8 B. Mon. 530; Carmichael v. Carmichael, 72 Mich. 76, 1 L.R.A. 596, 16 Am. St. Rep. 528, 40 N. W. 173; Bruce v. Moon, 57 S. C. 60, 35 S. E. 415; VanDuyne v. Vreeland, 12 N. J. Eq. 142; Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265; Bower v. Daniel, 198 Mo. 289, 95 S. W. 347; Amherst College v. Ritch, 151 N. Y. 282, 37 L.R.A. 305, 45 N. E. 876; Ahrens v. Jones, 169 N. Y. 555, 88 Am. St. Rep. 620, 62 N. E. 666; Re O'Hara, 95 N. Y. 403, 47 Am. Rep. 53. "The proposition is one which may be regarded as having been accepted generally," Baker v. Syfritt, supra, citing 1 Jarman, Wills, 27, 2 Story, Eq. Jur. § 785; Schouler, Wills, § 454; Walpole v. Orford, 3 Ves. Jr. 402, 30 Eng. Reprint, 1076, 4 Revised Rep. 38.

See also Best v. Gralapp, 69 Neb. 811, 96 N. W. 641, 99 N. W. 837, 5 Ann. Cas. 464; citing also Kofka v. Rosicky, 41 Neb. 328, 25 L.R.A. 207, 43 Am. St. Rep. 685, 59 N. W. 788; Price v. Price, 111 Ky. 771, 64 S. W. 746, 66 S. W. 529, 531; Howe v. Watson, 179 Mass. 30, 60 N. E. 415; Svanburg v. Fosseen, 75 Minn. 350, 43 L.R.A. 427, 74 Am. St. Rep. 490, 78 N. W. 4; Owens v. McNally, 113 Cal. 444, 33 L.R.A. 369, 45 Pac. 710; Teske v. Dittberner, 65 Neb. 167, 101 Am. St. Rep. 614, 91 N. W. 181, and lengthy opinion in rehearing in 70 Neb. 544, 113 Am. St. Rep. 802, 98 N. W. 57. See also Bird v. Pope,

73 Mich. 483, 41 N. W. 514, and Young v. Young, 45 N. J. Eq. 27, 16 Atl. 921.

Such is unquestionably the law. Early cases may be found as Cox v. Cox, 26 Gratt. 305, Snyder v. Snyder, 77 Wis. 95, 45 N. W. 818, and Bourget v. Monroe, 58 Mich. 563, 25 N. W. 514, in apparent conflict, but upon inspection are either later overruled or are distinguishable on facts from the one at bar. The legal title to these premises is held in trust for the plaintiffs, whose parents have substantially performed the contract as set forth under the facts.

As to the homestead rights of defendant Britha Hauge, mother, she is shown to have signed and executed the will jointly with her husband and to have received support for years under reliance by Andrew upon its validity and its being a part performance of the agreement of her husband, fee owner. She should not now be permitted to revoke her will with its contractual provisions performed to her advantage and to now assert that said contract is invalid. To do so will be equivalent of allowing her to defraud her son's heirs by revocation of her will and repudiation of her contract. Nelson v. Schoonover, 89 Kan. 388, 131 Pac. 147; Teske v. Dittberner, 70 Neb. 544, 113 Am. St. Rep. 802, 98 N. W. 57; Engholm v. Ekrem, 18 N. D. 185, 119 N. W. 35; Whitney v. Hay, 181 U. S. 77, 45 L. ed. 758, 21 Sup. Ct. Rep. 537. All that is sought is to sustain her own written instrument to enforce her own writing according to its terms, and meanwhile to maintain the *status quo* until it becomes operative. This is no invasion of her homestead rights, on the contract, they are duly respected and enforced for her benefit.

Appellants urge that the homestead, unproven when the will was executed and delivered, was not devisable by will or subject to alienation by will or contract under Federal statutes against alienation. On the contrary the Federal statutes recognize the right to make such a devise of an unproven homestead. U. S. Rev. Stat. § 2291, Comp. Stat. 1913, § 4532, declares that "no certificate however shall be given or patent issued therefor until [after] the expiration of five years from the date of such entry; and if . . . the person making such entry, or if he be dead his widow, or in case of her death *his* heirs or *devisee*" makes final proof, patent issues. It is not an alienation prohibited by the Federal Homestead Act. Newkirk v. Marshall, 35 Kan. 77, 10 Pac.

34 N. D.—42.

571, on facts very similar to those at bar. But the point has been ruled upon adversely, denying such contention in Adam v. McClintock, 21 N. D. 483, 131 N. W. 394, and Martin v. Yager, 30 N. D. 577, 153 N. W. 286. Defendants are estopped to assert such a claim. Title has vested in the father. The Federal government has had no interest for years in this tract, and it is the only one that could be heard to assert such to be an alienation contrary to law. The wife and these defendants, who seek to claim under the title of the parent, cannot question this vested interest in the son and his heirs on any such ground where the father himself could not have done so. Adam v. McClintock, supra. Nor can these heirs complain that the first will did not mention themselves. Its contractual features, not its testamentary ones, are before this court. It has become a contract; executed substantially and irrevocably as between sire and son, and is enforceable under all present-day authority. As a contract it is valid in equity, though perhaps as a will it would be invalid to operate to disinherit the defendants, they not being therein mentioned. Comp. Laws 1913, § 5667. It is further contended that as the will "runs to Andrew Torgenson only, not to his heirs or devisees," the services to be rendered by Andrew were personal in their character, and, this being the fact, no one could be substituted to complete his part of his contract, which was then subject to avoidance by the parents on the death of Andrew before either of them.

None of the cases sustain such a construction. In equity this contract was substantially performed. The father was virtually upon his death-bed when the son died, after fifteen years of observance of its terms. True the mother, seventy-four years of age, was alive at time of trial, but her expectancy is as short as her mind is enfeebled, as appears from her own testimony. To sustain appellants in this contention would place those who had sustained parents through their period of understanding into a ripe old age of childishness, at the irresponsible caprice of the enfeebled parent, and when such whim has been invited by the perhaps reprehensible conduct of envious relatives who for such years have shirked filial duties until in the late twilight of their parents lives is seen a chance to profit at the expense of the one who had, for filial reasons, or by valid contract, supported the parents for years.

Neither the contention that the personal care by Andrew or the fact of his death prior to that of his parents can bar equitable jurisdiction

to indirectly accomplish specific performance by enjoining violation of the contract. "Whether equity will decree the specific performance of a contract rests [entirely] in judicial discretion and always depends upon the facts of the particular case. As a rule when a definite contract to leave property by will has been clearly and certainly established, and there has been performance on the part of the promisee, equity will grant relief provided the case is free from objection on account of inadequacy, . . . and there are no circumstances or conditions which render the claim inequitable." Syllabus in Anderson v. Anderson, 75 Kan. 117, 9 L.R.A.(N.S.) 229, 88 Pac. 743. The performance by Andrew was complete until his death. The contract did not specify that his death should forfeit all rights of his heirs or estate obtained under such performance. Equity should not imply or construe such a forfeiture where none has been stipulated. In fact every equity and circumstance is in favor of enforcement of the contract, the contractual features of the will executed and delivered under it in partial performance of it.

The law and the equities of the case fully sustain the judgment appealed from and it is affirmed.