JOSEPH GOODWIN, Respondent, v. ELLA O. CASSELMAN, W. S. Casselman, F. H. Register, Don L. Tracy as County Judge of Emmons County, North Dakota, Nick Offling, Margaret Fox, Mary Garwood, Lucy Lang, Mary Marxen, Margaret Offling, Henry· Offling, Christina Offling, Mandy Offling, Rose Offling, Adam Offling, Hiley Offling, John Offling, Mathias Offling, Philip Offling, Peter Offling, Agnes Offling, and Kasper Offling, Appellants.

(200 N. W. 94.)

**Courts — jurisdiction of probate court does not extend to determination of rights of deceased in property based on contract.**

1. One M. C., an aged and enfeebled person, and G. had lived together for more than six years. They entered into a contract whereby the latter agreed to support the former in consideration of a promise on the part of the former to leave to him her property by will. A will to that effect was concurrently executed. M. C. went immediately to a hospital for treatment and soon thereafter was removed to the home of a friend, where she died. While at the latter place she made another will, in which this friend was the chief beneficiary, and after her death the later will was admitted to probate over objections of the beneficiary under the first will and of the heirs of M. C. It is *held:*

The jurisdiction of the probate court does not extend to the determination of the rights in property left by a deceased, where such right does not depend upon heirship or will but upon contract.

**Courts — district court and not probate court has original jurisdiction to determine contested property rights based on contract.**

2. The district court, being a court of general jurisdiction, has original jurisdiction to determine property rights based upon contract.

**Wills — will made pursuant to contract for support held not revokable so as to deprive of contract rights.**

3. Where a will is made pursuant to a contract for support, in which the party to furnish the support is made the beneficiary, and where such party had entered upon the performance in the manner contemplated and has not repudiated or broken his obligations, the will may not be revoked so as to deprive him of his contract rights.

Note—(3) Effect of agreement to make will, see annotation in 14 ·L.R.A. 861; 3 A.L.R. 172; 28 R. C. L.. 65; 3 R. C. L. Supp. 1557. .

Wills — evidence bearing on ability of promisee, in contract to make will, held properly excluded.

4. Certain evidence tending to establish the inability of G. to perform his obligations under the contract but which does not establish a breach was properly excluded.

Opinion filed July 18, 1924. Rehearing denied September 15, 1924.

Courts, 15 C. J. § 426 p. 1013 n. 92; § 428 p. 1017 n. 7; § 581 p. 1133 n. 39, 40. Wills, 40 Cyc. p. 1072 n. 29; p. 1074 n. 49.

Appeal from the District Court of Emmons County, *Allen, J.*
Affirmed.

*F. H. Register, Zuger & Tillotson, E. T. Burke,* and *Lynn & Lynn,* for appellants.

*Scott Cameron,* and *A. B. Atkins,* for respondent.

BIRDZELL, J.   This is an action to determine adverse claims and is here for trial de novo.   It arises out of the following facts:   Prior to the 16th day of September, 1921, Mary Cole and Joseph Goodin resided in Braddock, North Dakota.   Mary Cole was an aged woman of some means, having a house and some personal property in Braddock and a considerable amount of real estate in the vicinity; Goodin was a single man in middle life.   For some six or seven years Goodin had lived with Mary Cole, apparently doing odd jobs for her and occasionally working for other people.   He ministered to the personal wants of Mary Cole at such times as she would need assistance on account of illness or her enfeebled condition.   Prior to or on the 16th of September, 1921, one De France prepared a certain contract between Mary Cole and Joseph Goodin and likewise a purported will, and on that day he, at the request of Goodin, took the proposed contract and will to the house of Mary Cole.   There were also present in the house at the time, E. F. Savage, the village postmaster, and one Sempel, who had been called there by Goodin.   De France read the papers to Mary Cole. Then she asked Savage to read them, and as he was reading the contract she interrupted him with the statement, in substance, that she wouldn't sign them then.   There were some further remarks to the effect that she had given Goodin an automobile; that he had worn it out; that he

would be, or had been, paid for what he had done for her; and that there were some other people to whom she desired to make some presents. There were no papers executed at that time. They were left on the table and were picked up by Goodin. Mary Cole was intending to go to a hospital for treatment, and plans had been made for her and Goodin to go to Bismarck that day for such purpose. It was nearing train time when the persons who had come to witness the contract and will left the house. Goodin borrowed ten dollars on Mary Cole's credit to pay the expenses of the trip. After boarding the train and when they were about seven miles out of Braddock, Goodin informed one Atkins, a lawyer who was riding in the same coach, that Mary Cole desired to see him; whereupon he went to the seat occupied by Mary Cole and talked with her concerning the business which she proposed. She had him look over the papers that Goodin had brought along and he explained to her their legal effect. Atkins asked her why she had not signed the papers in Braddock and she answered that there were too many around that she didn't want to know her business. When she indicated a desire to sign them Atkins called another witness and the papers were executed on the train. Following are the papers:

This agreement, made this 16th day of September 1921 by and between Mary Cole, Braddock, N. Dak. and Joseph Goodin, Braddock, N. Dak.

Witnesseth, that the said party of the first part, in consideration of the promises and agreements hereinafter mentioned, on the part of the party of the second part, to be kept, done and performed, does hereby agree to convey by her last will and testament, unto the said party of the second part, his heirs or assigns, all the following described real and personal property situated in Emmons and Burleigh Counties:

South one half of section (14), in township one hundred thirty six (136), Range Seventy-five (75), containing Three Hundred Twenty Acres more or less, Emmons County, North Dakota. Lots (8) eight, (9) nine and (10) of Block (2) Two, also the East (30) Thirty feet and the West (110) One Hundred Ten feet of Lots (11) Eleven and (12) Twelve of Block (2) Two of the Village of Braddock, Emmons County, North Dakota. Part of Outlet A in the South East (SE¼) Quarter and part of Outlet E in the (SE¼) all in Section (27), Township

(136) One Hundred Thirty Six, Range (75), Emmons County, North Dakota. South East One Quarter (SE¼) of Section (20) Twenty, Township One Hundred Thirty Eight (138), Range Seventy Eight (78), containing One Hundred Sixty Acres more or less, Burleigh County, North Dakota. Personal property situated in the County of Emmons, North Dakota as follows: Five (5) head of horses, One Ford Touring Car, One wagon, One Disc.

In consideration of which the party of the second part agrees to provide and care for the said party of the first part during the remainder of her natural life, also agreeing that all right and title to property described shall be and remain in the party of the first part.

The said party of the second part further agrees to assume any and all debts, obligations of the said party of the first part, and in the event of his receiving title to property described, to fully pay and satisfy the same.

It is further agreed that the said party of the first part shall cause to be executed her Last Will and Testament in accordance with agreement hereinbefore written.

In testimony whereof, both parties have hereunto set their hands and seals this 16th. day of September, A. D. 1921.

Mary Cole.

Joe Goodin.

Signed, Sealed and Delivered

in the presence of

Arthur B. Atkins.

A. B. Currier.

STATE OF NORTH DAKOTA }
County of Burleigh } ss.

On this 16th. day of September, A. D. 1921, before the undersigned a Notary Public within and for said County, personally appeared Mary Cole and Joseph Goodin known to me to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed the same as their own free act and deed.

Arthur B. Atkins

Notary Public, North Dakota.

My Commission expires July 26, 1927.

## LAST WILL.

I, Mary Cole of the Village of Braddock in the County of Emmons and State of North Dakota of the age of eighty three years, and being of sound mind and memory, do hereby make, publish and declare this my Last Will and Testament, in manner following, that is to say:

First—It is my will that my funeral expenses and all my just debts be fully paid.

Second—I give and bequeath to Joseph Goodin of the County of Emmons, State of North Dakota, the following described real and personal property, to wit: South One Half of Section (14) Fourteen, in Township One Hundred Thirty Six (136), Range Seventy Five (75). Lots (8) Eight, (9) Nine, (10) Ten, also the East thirty (30) feet and West One Hundred Ten feet (110) of Lots (11) eleven and (12) Twelve, in Block (2) Two in the Village of Braddock, Emmons County, North Dakota. Part of Outlet A in the South East Quarter (SE¼) and part of Outlet E in the South East Quarter all in Section (27) Twenty Seven, Township One Hundred Thirty Six (136), of Range Seventy Five (75), Emmons County, North Dakota. South East One Quarter (SE¼) of Section (20) Twenty, Township One Hundred Thirty Eight (138), Range Seventy Eight (78), Burleigh County, North Dakota. All my personal property now situated in Emmons County, North Dakota. Notes as follows: L. P. Weber $260.00, Fred Nichols $100.00, Wm. Koenig $100.00, W. S. Casselman $160.00, A. N. Ellingson $25.00.

Lastly—I hereby nominate and appoint H. O. Batzer, Hazelton, N. Dak. to be the executor of this my Last Will and Testament, hereby revoking all former wills by me made.

In Witness Whereof, I have hereunto set my hand and seal the 16th day of September in the year of our Lord one thousand nine hundred and twenty one.

Mary Cole   (Seal)

The above instrument, consisting of two sheets, was now here subscribed by Mary Cole, the Testatrix, in the presence of each of us, and was at the same time declared by her to be her Last Will and

Testament, and we, at her request, sign our names hereto in her presence as attesting witness.

Arthur B. Atkins of Napoleon, N. D.

A. B. Currier of Bismarck, N. D.

The contract was delivered to Goodin and the will was retained by Atkins. When the train reached Bismarck Mary Cole was taken to a hospital and Goodin returned to Braddock where he proceeded to take care of some horses and chickens belonging to Mary Cole and to look after some hay on a quarter section belonging to her, situated some distance away in Burleigh County. During the following ten days he hauled several loads of hay to Bismarck, each time calling on Mary Cole. It seems that she remained at the hospital but a few days, leaving there to stay at the home of W. S. Casselman in Bismarck. On September 23rd she executed another will in which she bequeathed to two brothers and three sisters, "if they are living and can be located," the sum of five dollars; to Joe Goodin of Braddock the sum of five dollars, a Ford automobile and a bedstead and mattress which he had been using; then followed three bequests amounting to $250; and all the residue of her property was devised and bequeathed to Ella O. Casselman of Bismarck. Mary Cole died in Bismarck November 2, 1921, leaving certain heirs at law who are not mentioned in either will and with whom, apparently she had had no communication for many years. Both wills were offered for probate in Emmons County and the later one was probated over the objection of the heirs and of Goodin. The plaintiff herein has not appealed from the judgment of the county court admitting the later will to probate. The trial court entered a judgment in this action sustaining the right of the plaintiff under the contract and will and there are separate appeals from the judgment so entered; one by the executor and certain of the beneficiaries under the second will, and the other by the heirs of Mary Cole.

Three main propositions are advanced on this appeal; first, that the plaintiff is concluded by the judgment of the county court admitting the second will to probate, from which judgment he has not appealed; second, that as the county court is vested with exclusive original jurisdiction in probate and testamentary matters, the district court was without jurisdiction to entertain this action; and third, that certain errors were committed in the exclusion of evidence offered which would

have had a tendency to disprove the performance by the plaintiff of the alleged contract or the absence or failure of consideration.

It would seem to be clear that the first two propositions are without merit. Obviously, the jurisdiction of the county court in probate matters is a jurisdiction, so far as wills are concerned, to determine whether or not a will that is offered for probate has been executed in the manner required by statute, by a person who at the time had testamentary capacity, and that such person had exercised his right to make a will without being unduly influenced by others. It is not concerned with the legal effect of contracts insofar as they might give rise to claims adverse to claimants under the will. The probate court can not try title to property. Finn v. Walsh, 19 N. D. 61, 121 N. W. 766; Torgerson v. Hauge, 34 N. D. 646, 3 A.L.R. 164, 159 N. W. 6. The plaintiff's claim in this case is derived from the contract. If this contract be valid and if it has been performed, to the extent of the execution of a will, it gives rise to a claim to the property of the deceased, which, in the absence of rival claims, might be successfully asserted in the probate court. But when such a claimant is met in probate court by others who assert interests derived from a later will, valid for all purposes of probate, his claims can only be vindicated in a court having jurisdiction to litigate and determine the contract rights.

Concerning such contracts as the one involved here, 1 Schouler, on Wills, Executors & Administrators, 6th ed. § 694, says:

"Contracts to leave by will seem to be growing in favor and there are many recent cases on the subject. Such an arrangement appeals to many as it leaves them full control of their property during their lives and where the testator is aged and the estate is small it is often the only way the testator can secure for himself care and attention during his declining years, it operating thus as a species of annuity. It is perfectly well settled that such contracts are legal and binding, the only difficulties arising in regard to their construction and enforcement.

"One may make a valid contract to leave his property by will in a certain way, if the minds of the parties meet, but the contract, to be valid, must not be in restraint of marriage. The intent of the promisor must be measured as of the date of the alleged contract. . . ."

Speaking of a will based upon such a contract, the same author says (§ 691):

"As a matter of legal principle, then, we must admit that there may be in effect wills revocable and wills irrevocable; that all testamentary dispositions are not absolutely and completely in the nature of a gift by the disposer; that a testator's intention must bend to imperious circumstances which interfere with his free, ambulatory disposition, and mould, partially, or it may be wholly, the settlement of the estate which he leaves at his death.

"We may perhaps fairly assume as a general principle recognized in equity, that full specific enforcement will not be applied in cases of this sort, where the contract made is vague and uncertain for proof, or the remedy sought is harsh or oppressive, or unjust to innocent third parties; nor so as to extend a specific enforcement beyond the scope of the actual obligation."

And, speaking further of the consideration necessary to support such a contractual disposition, the author says, (§ 700):

"A contract to leave property by will must be founded on a valuable consideration. This rule of valuable consideration we find practically applied where one renders valuable services on the promise of a legacy. One who boards, nurses or cares for, some aged or feeble person, does so, in many instances, on the promise or expectation of a legacy, or it may be, the whole surplus of the estate. . . . The most common instances of valid consideration for a contract to leave by will are those where the consideration is services, for care of decedent.

"The consideration for such a contract is also sufficient where it is for money loaned, for making improvements on the land of the promisor, or execution of notes at a high rate of interest, past favors," etc.

See also Underhill, Wills, § 289, and 25 R. C. L. 311.

In this case the evidence is clear that Mary Cole knew both the contents and the legal effect of the contract and the will executed by her, and the evidence will not support a finding that she was imposed upon by the beneficiary. So it must be assumed that the Goodin contract and will fairly expressed her intention at the time they were executed. It is true that by reason of subsequent events—principally the fact of her death occurring while away from home for the purpose of receiving treatment and her continued absence after the execution

of the contract and will—the performance of the contract on the part of Goodin involved but little burden, but it is equally true that during the period intervening the execution of the contract and the death of Mary Cole, he apparently did everything that he was expected to do by way of performance. The contract being valid, he was, of course, under its terms, obligated to meet the expenses incident to the attention given to the deceased. It appears that he has not done this, but it seems that he was not called upon to do so, partly or wholly, because of the ministrations of friends who anticipated sharing liberally in the decedent's estate. It can not be said that he ever repudiated the contract or expressed any unwillingness to perform it. We are satisfied that the contract was supported by a legal consideration and that there are not present any equitable circumstances to defeat the rights which Goodin acquired thereunder, nor which preclude him from pursuing his equitable remedy. For a case somewhat analogous, see Alexander v. Lewes, 104 Wash. 32, 175 Pac. 572.

With regard to the specific contention that there was prejudicial error in refusing to receive evidence offered upon the trial, in an attempt to show the plaintiff to have been a person who worked but little and who had no property, who was reckless in his personal habits and who had committed some minor offenses, we think it sufficient to say that, while these matters might have more or less bearing on the question of the ability of the plaintiff to perform his obligation under the contract, they would not show that he had, in fact, committed a breach. Whatever his habits were regarding industry and thrift and the use of intoxicants, it must be presumed on this record that they were known to Mary Cole; for it must be remembered that he had lived with her for more than six years and that she was content, notwithstanding, to rely upon him to the extent indicated in the contract. It is proper to observe that the record in this case shows that Mary Cole, by making the disposition of her property, which is evidenced by the contract and the first will, was not depriving the natural objects of her bounty, for it appears that for many years she had lived apart from her immediate kin. She had had little or no communication with them and had been apparently content with a practical dissolution of all family ties, even up to the time of her death.

The judgment is affirmed.

JOHNSON, and NUESSLE, JJ., concur.

BRONSON, Ch. J. (dissenting). This is an action labeled an action to determine adverse claims. The complaint alleges the employment of plaintiff by deceased and an agreement to transfer, by will, her property to him if he would continue in her employ and care for her and her property; that in reliance upon this oral agreement he continued to live with the deceased and cared for her and her property without compensation other than his board; that while not so engaged in caring for her he earned large sums of money working for others which he used in caring for her excepting only such amount as was necessary for his personal needs; that pursuant to such oral agreement the deceased made, on Sept. 16th, 1921, a written agreement (set forth in the majority opinion) to convey to him her property and, also, her last will (set forth in the majority opinion) in conformity thereto; that by reason thereof plaintiff acquired a contractual and vested interest in her property which could not be divested by a subsequent will; that on Sept. 23rd, 1921, deceased made a subsequent will (described in the majority opinion); that such last will was admitted to probate in the county court and defendant W. S. Casselman appointed as executor thereof; that such county court, unless restrained, would proceed to execute such will which is null and void. The prayer of this complaint requests that adverse claims of defendants be set up; that the last will be adjudged null and void; that the county court be restrained from interfering with plaintiff's right, title, use and occupation of the property.

Three defendants, named as beneficiaries in the last will, answered. Among other things they allege that the first will was procured by misrepresentation, fraud, duress and without decedent's knowledge of its contents; that the last will was filed in the county court and was duly admitted to probate on Feb. 16th, 1922; that plaintiff appeared in the proceedings for the probate thereof and proposed for probate the will of Sept. 16th, 1921, as decedent's last will; that after a full hearing the county court refused to admit to probate the first will but admitted to probate the last will; that more than 30 days have

elapsed since such allowance of probate and plaintiff has not appealed therefrom and is now estopped to contest the validity of the probate proceedings had.

The heirs at law of the deceased, consisting of 4 children, 13 grandchildren, answered and alleged that the agreement between plaintiff and deceased was without consideration and was never delivered; that at the time of its execution deceased was mentally incapacitated; that both of the wills made are null and void; that if either of such wills are valid defendants were unintentionally omitted therefrom; that the estate is in course of probate in the county court; that no appeal has been taken from such court upon the matters alleged in the complaint but that an appeal has been taken from the order admitting the last will to probate which appeal, however, does not vest jurisdiction in this court concerning the matters embraced within the complaint.

This action was instituted in June, 1922. Trial was had on Nov. 29th, 1922. The transcript is short, consisting of less than 60 pages. Plaintiff testified to the following effect;—He is 40 years of age. For some 7 years, from 1915 to 1922, he lived with deceased at Braddock, N. D. He worked for her. She had farms and some personal property. She would rent some land now and then and he would look after the crop and see that she got her share. He came to North Dakota in 1910. He worked around on farms. He had once been a lumber-jack. He also ran steam engines. In the spring of 1915 he was running an engine for defendant W. S. Casselman and one Smith. In 1916 he stayed around deceased doing garden work and things like that excepting that he did some plowing for 15 or 20 days for one Stack. In 1917 he helped Smith put in some crop then he went up in Canada for two months. In 1918 he did some more work for Smith and fixed cars some in Braddock. Most of the time he loafed and stayed with decedent. In 1919 he took care of the decedent and did some farming for her but there was no crop on account of grasshoppers. The question was then asked of plaintiff if he did not borrow from deceased $350.00 that year. The answer was excluded upon objection made. In 1920 he worked one week running a steam engine for one Lavine and worked for the deceased doing farm work. Plaintiff lived with Mrs. Cole in a house in Braddock in the front part of which there was a cream station. (The size or condition of this house does

not otherwise appear.) In 1920, apparently during the latter part of the year, deceased suffered a stroke of paralysis. Pursuant to plaintiff's testimony, she required much attention after she had received this stroke. For four or five months he had to help her out of bed. He had to help dress her and cook for her. About Sept. 16th, 1921, the deceased became quite ill and feeble. Plaintiff saw one De France. He drew up for them the agreement between plaintiff and deceased. He also drew up the will. (The first will signed by deceased.) De France then went over to deceased's place. She said she did not care to sign then for the reason that she had other friends she wished to remember. One 'Savage also went along at the time, at the request of plaintiff. He read some of the contract to her and she said she did not want to sign it now. She made the remark that she had given an automobile to plaintiff. Plaintiff remarked that it was worn out and she replied that plaintiff wore it out. She then made a further remark that plaintiff would be paid for what he had done for her. She also remarked that there were some other persons to whom she wanted to make some presents. So the contract and the will were not signed at that time. On the same day deceased left Braddock on the train, for Bismarck. Plaintiff was with her. He had with him the contract and the will. On the train plaintiff made the request to Attorney Atkins, who happened to be on the train, that deceased wanted to see him. The attorney then conversed with her in the presence of plaintiff. Deceased stated she wanted to execute some papers. The attorney read and explained the contract to her. Another witness was procured on the train. The contract and the will were then signed. The attorney kept the will and handed the contract to plaintiff. At Bismarck plaintiff took deceased to the St. Alexius hospital. He said to the Sisters at the hospital that he wanted a place for her as she was feeble and needed a little care while he cut hay on the tree claim. He went home the next day. He cut hay on a tree claim, located in Burleigh County. He cut probably six or seven loads of hay on this claim and sold it for $9.00 and $10.00 per ton. One-half belonged to deceased, the other half to one Hyness. With the money he received for her share he bought something to eat and feed for the horses. He gave none of it to deceased nor did he pay anything to the hospital for her bill there. At the hospital he saw her twice. Apparently deceased was

at the hospital for about a week. Then she was over at defendant Casselman's and he saw her five or six times as he was going to town nearly every day with a load of hay and would stop there and see her. Also, with defendant's money he bought some gasolene, attended to the horses and drove the car back and forth. He was about a week putting up this hay and his services were worth about $3.00 per day. From the time the contract was signed until decedent died plaintiff, pursuant to his testimony, was working for her. At Braddock there were 22 chickens and 6 horses. He kept the horses in the yard at night and on the range during the day. He had another fellow looking after them, who owed him for some work that plaintiff had done. This was all the personal property she had there which he was looking after. Otherwise, plaintiff testified that he had no property when he came to deceased and has none now. Otherwise, it appears in the record that at the time the agreement was signed the deceased was 83 years of age. The exact date of her death does not appear in the record but it does appear that one will was offered for probate on or about Dec. 1st, 1921.

The trial court found that for some six years prior to the death of deceased plaintiff used his money in maintaining the household of himself and deceased and all money earned was turned in and became part of the general household fund; that after deceased was removed from the hospital in Bismarck she was taken to the home of defendant Casselman where, later, she died; that from the time of the execution of the contract as well as prior thereto and continuously, until prevented by the executor, plaintiff complied with his part of the contract, cared for the deceased and cared for her property. As conclusions the court held to be valid the contract made by the plaintiff and deceased; that the will of Sept. 16th, 1921, was in accordance with and in furtherance of performing and providing for performance on the part of deceased, pursuant to the terms, conditions and obligations of the contract; that when the last will was made, deceased was without capacity in any way to execute the contract made with plaintiff and that the will executed on Sept. 23rd was null and void and without legal effect; further, that the will of Sept. 16th was decreed to be the last will and testament of deceased and should be admitted to probate according to the terms of the contract between plaintiff and de-

ceased; that defendants have no claim or interest in the property of deceased and that all proceedings had in the district court in connection with the probating of the will of Sept. 23rd, 1921, and for the appointment of executor therein were null and void; that such executor was decreed to be a trustee. Pursuant to such findings and conclusions, judgment was entered from which this appeal has been prosecuted by appeals of the heirs at law and of the beneficiaries named in the last will.

The record has been set forth somewhat fully and at length in order that same comprehension may be had of the multitude of errors involved in this nondescript proceeding, which are perpetuated by the judgment of the trial court and its affirmance by this court. The action is in no proper sense an action to determine adverse claims. Plaintiff, in his brief, recognizes this fact by asserting, in order to avoid appellants' contentions, that the action is in the nature of specific performance to compel performance of the contract and to prevent personal representatives of deceased from escaping their just and equitable duties under the contract. (See Resp. Brief. pp. 9 & 23.) Such assertions, now made as admissions, are a considerable departure from the theory of the trial court as expressed in its findings, conclusions, and judgment.

The effect of the majority opinion, in affirming the judgment of the trial court, is to nullify the probate of the last will, already allowed by the county court, determined its action had in that regard null and void, admit to probate the first will as the last will of deceased and absolutely fix plaintiff's rights thereunder, regardless of the original jurisdiction of the county court in such matter and of the jurisdiction of the district court in another appeal pending concerning the allowance to probate of such last will. Again, the effect of the majority opinion (although the language used does not equal the effect) is to determine that the first will made cannot be revoked and that no testamentary capacity existed to make any subsequent wills.

The authorities, however, are practically in harmony to the effect that an agreement or contract to will or set aside property of a person, subsequently deceased, does not, ipso facto, invalidate a will made in derogation thereof. In other words, the general theory or principle upon which the courts proceed is to construe the agreement, binding

upon the property of the testator to the extent of fastening a trust thereupon in favor of the promisee, through specific performance if equitable so to do. 25 R. C. L. 306; 40 Cyc. 1068; 1 Schouler, Wills, 6th ed. § 711, p. 812; Thomp. Wills, § 33, pp. 37 and 39; note in Ann. Cas. 1914A, p. 399. This theory or principle has been expressly recognized by this court in Torgerson v. Hauge, 34 N. D. 646, 655, 3 A.L.R. 164, 159 N. W. 6. In fact, plaintiff, in his brief, has expressly conceded such principle as applicable. (See Pltff. Brief p. 15.) Hence, the fact of the contract having been made cannot be used to defeat the probate of the last will, as a will. 20 Cyc. 1071.

In the case at bar, the agreement covers certain real property and five horses, one Ford car, one wagon and one disc. The will covers such certain real estate and all personal property situated in Emmons County and, besides, five certain notes made by different parties. Manifestly, in any event, the first will has no validity in view of the subsequent will except as the contract vitalizes the subject matter. The will manifestly covers more property than the contract. In other words, pursuant to the broad scope of the action and the findings and judgment of the trial court as now adopted by the majority opinion, if the deceased had inherited, while in the hospital, a million dollars, that million dollars should pass to the plaintiff although it was neither involved nor considered in the agreement made. It ought to be evident that this action is founded upon the contract to fasten a trust upon the subject matter through specific performance. It is not an action to probate a will. Jurisdiction for that purpose rests originally in another court. A county court already has exercised jurisdiction in that respect and for probate purposes has decreed the second will made by deceased to be her last will and testament and has allowed the same, as such, to probate. Plaintiff accordingly may not now question the probate of such last will or attack it collaterally unless in equity he possess an independent ground for the creation of a trust that will impound the property involved in the probate of such last will. Any trust imposed should not cover, in any event, any more property than that which is included in such contract; the probate proceedings of the county court should be upheld and the allowance of the last will sustained excepting so far as a lien may be imposed for specific performance required pursuant to the terms of the contract made be-

tween plaintiff and deceased. In my opinion the error of the trial court is manifest.

Concerning the sufficiency of the evidence to warrant specific performance of the contract, I am of the opinion that the evidence is so indefinite and uncertain and so brief in general that equity, under the circumstances, should not compel specific performance of the contract until it is clearly made to appear that plaintiff in good faith performed services for the deceased which in equity should require the recompense of the transfer to him of all the property covered in the contract.

As far as this record is concerned there is no specific showing in the evidence that he ever spent one single dollar of his own money in behalf of her. Prior to the time of the execution of this agreement there is some evidence, stated by way of generality, that he did some work and contributed some money to the common household, but there is equally, other evidence that points in the general direction that plaintiff at all times was the beneficiary of the deceased, both in money, in property, and in having for him a home provided. After the contract was executed there is not a single item in the evidence shown of performance of service by plaintiff for the deceased excepting the cutting of some hay on a tree claim for all of which plaintiff was well paid by appropriating the proceeds of money derived therefrom practically to his own use. The record, in its present shape, is wholly devoid of such facts and circumstances which equity ought to regard as sufficient to compel compensation to be made for services rendered by one in good faith to another by turning over the entire accumulations of one's property to that person. It is well settled that in such an action to specifically enforce a contract and to impose a trust, a valuable consideration, and payment or performance thereof must be shown. Note in Ann. Cas. 1914A, p. 407; 1 Schouler, Wills, § 711, p. 813. The observation made by the majority opinion to the effect that deceased, through her disposition of the property pursuant to the contract, did not deprive the natural objects of her bounty, finds little justification in the record, for the record is singularly free in disclosing any estrangement existing between deceased and her numerous kin or that the bounty conferred under the last will upon the beneficiaries was in any manner forced or other than deservedly gratuitous. Under the same general line of observation the inference might as well be made

that plaintiff, as a knight errant, without horse or baggage, is seeking now to get for himself gratuitously the home and property, that gave to him repose, sustenance and shelter.  In my opinion the judgment should be reversed and a new trial had.

CHRISTIANSON, J. (dissenting).  The instruments involved in this controversy were executed on September 16, 1921.  According to the undisputed evidence, they were executed under the following circumstances:—Mary Cole was a woman some eighty-three years of age, and possessed of considerable property.  The plaintiff, Goodin, was a relatively young man, who had made his home at Mary Cole's house for some six or seven years.  Shortly before the execution of the instruments in suit Mary Cole became quite ill and it was determined that she should be taken to a hospital in Bismarck for treatment.  On the day she was to be taken to the hospital the plaintiff, Goodin, went to a banker named De France and caused De France to prepare the will and contract under which Goodin claims in this suit.  There is not the slightest evidence that Mary Cole had suggested that these instruments be prepared or that she had expressed any desire to that effect. So far as the evidence shows, Goodin, and Goodin alone, was the moving spirit in that matter.  De France testified that when Goodin came and requested him to prepare these instruments he (Goodin) brought along descriptions of some of the property and that the descriptions of the remainder of the lands were obtained from a certain plat book.  After De France had prepared the instruments he and a man named Savage and another named Semple, all at the request of Goodin, went over to Mary Cole's house.  Savage and Semple were asked to come along for the purpose of acting as subscribing witnesses upon the instruments. The instruments were read to Mary Cole by Savage, and Goodin asked her to sign them but she expressed unwillingness to do so and did not sign them.  Both DeFrance and Savage testified positively that during this discussion she stated that she had some other friends that she wanted to remember.

It is also undisputed that during this conversation she stated that she had already given Goodin an automobile and that when he stated the automobile was worn out she countered by saying that he had worn it out and that she further said that he had or would be paid for what

he had done for her. The conditions under which Goodin had these instruments presented to Mary Cole for execution, and asked her to execute them is described by Savage, in his testimony, thus: "She was suffering some. She had been sick and I think the doctor had ordered her to be taken to the hospital, and she was able to walk over to the train. When we went there it was almost train time and she was all prepared to take the train. She had everything on except her hat, all ready to take the train, and I made the remark that she would have to hurry to catch the train, it was that close to train time."

Shortly after Mary Cole left for Bismarck. The plaintiff, Goodin, accompanied her, and it was on the train between Braddock and Bismarck that the instruments in suit here were executed. The only evidence as to what occurred at the time the will and contract in suit were executed is the testimony of one Atkins, who signed as one of the subscribing witnesses on the will, and acted as Notary Public in taking the acknowledgment of the contract. Atkins is also one of the attorneys for the plaintiff in this action. Atkins testified that he assisted Mary Cole in getting on the train at Braddock; that shortly after the train had started the plaintiff, Goodin, came to where Atkins was sitting in the car and stated that Mary Cole desired to see him; that he (Atkins) then went over and explained the contents and legal effect of the papers to her and that she indicated her desire to execute them; that during all this time the plaintiff, Goodin, was sitting beside Mary Cole. Atkins testified:

She and Joe were sitting opposite me.

Q. You say you read the paper called contract here over to her?

A. I did. I didn't read it word for word, but I explained it's contents and legal effect to her.

Q. What did you do about the will?—did you read them separately?

A. No, I told her she was executing a contract wherein she contracted to will her property to Mr. Goodin, and pointed out Mr. Goodin to her. And she signified her wish to execute it, and I got the other gentleman to come over and she signed them.

Q. What was the paper written on at the time the names were signed there?

A. She had a small grip that we put in our laps.

Q. Mrs. Cole seem to be in any pain at that time?

A. She seemed to be in some physical pain.

These are the conditions under which the instruments in suit were executed. Here we have an old woman—a woman eighty-three years of age—very ill and in pain. She is about to be taken to a hospital in a city some thirty miles away. All these things are known to a certain man who for some six or seven years has been an inmate of her home, who has no property of his own, but is aware of her property holdings. He causes certain instruments to be prepared whereby, upon her death, all her property becomes his. He causes these papers to be presented to her for signature and specifically asks her to sign them just as she is about to be taken to a hospital. She declines to execute the instruments. In doing so, she alludes to the fact that she has already given him an automobile, and further says that he has been or will be paid for anything he has done for her. She further gives as a specific reason for declining to execute the instruments that the disposition made of the property in such instruments is not in accord with her desires; that there are certain other persons to whom she desires "to remember," that is, that there are certain other persons to whom she desires to make bequests. Immediately following this occurrence she leaves her home for the hospital. Within a short time, (not more than one or two hours) thereafter, while she is on her way to the hospital the plaintiff procures an attorney who is riding on the train to go over the instruments with her. He explained the contents and legal effect of the instruments to her but did not read them word for word. While this is being done the man who has caused the instruments to be prepared and who only a short time before asked her in vain to execute them, is sitting beside her in the seat in the railroad coach. These are the only persons present and participating in this conversation. At this time she signs her name to the instruments although no change has been made so as to provide for the bequests to the other persons she had stated only a short time before that she desired to "remember" in her will. At this time, also, she gives such evidence of pain and suffering that it is obvious to the witness. The instruments which she signed at this time are in the record and her signature thereto is almost illegible. These are the conditions under which the instruments under which plaintiff claims were executed.

51 N. D.—36.

After her arrival at Bismarck Mary Cole was taken to the hospital where she remained for a short time and was then removed to the home of a friend where she subsequently died. Some time prior to her death she executed another will, wherein she made bequests to a church at Braddock, her brothers and sisters and certain persons who had befriended her during her lifetime, including a bequest to the plaintiff, Joe Goodin, and bequeathed the remainder of her property to the friend in whose house she was then being cared for.

There is no contention that there was any prior agreement between the parties, and that Goodin rendered any service in reliance thereon. So far as the record shows the scheme or arrangement evidenced by the instruments in suit were born in the mind of Goodin, and sought to be carried into effect, when it became apparent that Mary Cole was in such serious condition that she must be removed from her home and taken to the hospital in the city of Bismarck. In view of her advanced age and serious ailment her life expectancy was not long. I think no one can reasonably conclude that the real object of the instruments in suit was to make provision for the maintenance and care of Mary Cole. Their real purpose was to obtain Mary Cole's property for Joe Goodin. While much of the evidence offered by the defendants was excluded it nevertheless appears that Goodin is a man wholly without means, and in fact had no capacity to provide for Mary Cole unless he did so out of her property. While a comparatively young man he apparently had for six or seven years been satisfied to live largely at the expense of Mary Cole. He in no manner changed his course of conduct as a result of the contract. He proceeded to do after the execution thereof, what he had been doing before, namely, make his home at Mary Cole's house and receive his sustenance from her property. I am of the opinion that the plaintiff is not entitled to any relief in this action. I believe the judgment should be reversed and the action dismissed.