John KUHN, Plaintiff-Appellant,

v.

Judith M. KUHN, Adam Ralph Kuhn, Leona Kuhn Hoff, and Leo Kuhn, Defendants-Appellees.

Civ. No. 9567.

Supreme Court of North Dakota.

May 11, 1979.

As Modified June 29, 1979.

Rehearing Denied July 11, 1979.

Fleck, Mather, Strutz & Mayer, Bismarck, for plaintiff and appellant; argued by Russell R. Mather, Bismarck.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendants and appellees Judith M. Kuhn, Adam Ralph Kuhn, and Leona Kuhn Hoff; argued by Ward M. Kirby, Dickinson.

PAULSON, Justice.

This is an appeal from a judgment of the district court of Stark County dismissing the complaint of John Kuhn.

Wendelin Kuhn and Rosa Kuhn were husband and wife, and during their marriage, they acquired certain personal property and real property consisting of a home in Richardton as well as farmland in Stark and Dunn Counties. The greater portion of the real property was acquired in Rosa Kuhn's name. Some of the real property was subsequently conveyed to themselves by a joint tenancy deed. Wendelin and Rosa Kuhn entered into a "family agreement" on July 5, 1952, which is the basis of this litigation. The agreement was also signed by all of their children at a family reunion, with the exception of Judith Kuhn, who was unable to be present. Wendelin Kuhn died on February 15, 1953. All of the real property which he owned was held in joint tenancy with right of survivorship with his wife Rosa. After Wendelin's death, Rosa executed four deeds which were dated April 9, 1953. These deeds conveyed the property in accordance with the terms and provisions of the family agreement. The deeds were held in Rosa Kuhn's safety deposit box and were never delivered or recorded at any time prior to her death.

On November 2, 1961, Rosa executed a will by the terms of which she devised the surface real property pursuant to the family agreement, but devised the mineral estate in such property to her children, John Kuhn, Adam Ralph Kuhn, Leona Kuhn Hoff, and Leo Kuhn. The latter devise was subject to a payment to Judith M. Kuhn totaling $2,000, pursuant to the family agreement. $1,000 was to be paid by John Kuhn and $1,000 was to be paid by Leo Kuhn. The family agreement entered into on July 5, 1952, reads as follows:

"On this 5th day of July of nineteen hundred and fifty-two an agreement has been made between the following parties, Rosa Kuhn, Wendelin Kuhn, John Kuhn, Adam Ralph Kuhn, Leona Kuhn Hoff and Leo Kuhn.

"Terms of this agreement are as follows. After the death of Rosa Kuhn and Wendelin Kuhn their property will be divided as follows:

"To John Kuhn will go S ½ of the SW ¼, S ½ of SE ¼ of Se 24—tship 143—Range 92

"Also: S ½ of SE ¼, NE ¼ of SE ¼, SE ¼ of NE ¼, of Se 26—tship 143—Range 92

"To Adam Ralph Kuhn will go SW ¼, of Se 13—tship 143—Range 92

"To Leona Kuhn Hoff will go the house together with household goods and lots No. 17 and Block 22 in Richardton

"To Leo Kuhn will go: SW ¼, S ½ of NW ¼; SW ¼ of NE ¼, NW ¼ of SE ¼ of Se 26—tship 143—Range 92

"John Kuhn and Leo Kuhn will each pay $200 per year plus interest 2% for 5 years and not to exceed $1,000 each, principal to Sister M. Judith as her share of property.

"All money and cattle left after the death of Rosa Kuhn and Wendelin Kuhn (parents) is to be divided evenly among

all parties concerned and Sister M. Judith.

"If A. Ralph and Leo Kuhn are owing money to Rosa Kuhn and Wendelin Kuhn at time of their death, all interest is to be stopped and balance must be paid and then the total sum is to be divided equally among all.

"A certain amount of this debt must be paid yearly according to the income of Ralph Kuhn and Leo Kuhn.

| John Kuhn | "Signed: Rosa Kuhn |
| Adam Ralph Kuhn | Wendelin Kuhn |
| Leo Kuhn | Leona Kuhn Hoff" |

Rosa Kuhn executed a subsequent will on September 12, 1968. Rosa died on June 20, 1977. Her survivors are her five children who are parties to this action, namely, John Kuhn, the plaintiff and appellant, and Judith M. Kuhn, Adam Ralph Kuhn, Leona Kuhn Hoff, and Leo Kuhn, defendants and appellees.

The September 12, 1968, will was later offered for probate in the Stark County Court with Increased Jurisdiction. John Kuhn attempted to offer the family agreement as a valid joint and mutual will executed by Wendelin and Rosa Kuhn. The Stark County Court With Increased Jurisdiction, after the two other wills which had been executed by Rosa Kuhn on November 2, 1961, and on September 12, 1968, respectively, and the family agreement signed by Wendelin Kuhn and Rosa Kuhn and by four of their children on July 5, 1952, had been offered, admitted the September 12, 1968, will for probate. John Kuhn appealed to the Stark County District Court from the order admitting the 1968 will for probate. This appeal was dismissed by stipulation in the district court on May 12, 1978.

John Kuhn commenced an action in the nature of a declaratory judgment on December 7, 1977, in which he alleged that the family agreement of July 5, 1952, was a valid joint and mutual will which was not revoked prior to Wendelin's death; and John Kuhn requested that the court declare that he would share in the property pursu-ant to the provisions of the family agreement. Judith M. Kuhn, Adam Ralph Kuhn, and Leona Kuhn Hoff interposed an answer in which they alleged that the family agreement dated July 5, 1952 does not comply with the laws relating to the execution of a valid will and they further alleged that if the agreement constitutes a binding contract to make a will by Wendelin and Rosa Kuhn, such an agreement is void because of a failure of consideration.

The trial was held in the district court of Stark County before the Honorable Lyle G. Stuart, Judge, presiding without a jury. Subsequent to the trial, the district court entered its findings of fact, conclusions of law, order for judgment, and judgment, dismissing John's complaint. John has appealed from the judgment.

The issues are as follows:

(1) Is the agreement dated July 5, 1952, a valid will?

(2) Is the agreement dated July 5, 1952, a valid contract to devise or bequeath property?

(3) Is the agreement entitled to be enforced in equity?

We will first determine whether or not the 1952 family agreement is a valid joint and mutual will. John asserts that the family agreement constitutes a valid will pursuant to §§ 30.1–08–02 and 30.1–35–01, N.D.C.C.

■ Sections 30.1–08–02 and 30.1–35–01, N.D.C.C., are not applicable because they were not in effect when the family agreement was executed in 1952 or when Wendelin died in 1953. Section 56–0302, of the North Dakota Revised Code of 1943,[1] which was in effect in 1952 and 1953, sets forth the requirements for executing a valid will as follows:

"*56–0302. How Wills Must Be Executed and Attested.*—Every will, other than an olographic will and a noncupative

---

1. *See* § 56–03–02, N.D.C.C., which was repealed in 1973 when the Legislature adopted the Uniform Probate Code.

will, must be executed and attested as follows:

1. It must be subscribed at the end thereof by the testator himself, or some person, in his presence, and by his discretion, must subscribe his name thereto;

2. It must be subscribed in the presence of the attesting witnesses, or be acknowledged by the testator to them to have been made by him or by his authority;

3. The testator, at the time of subscribing or acknowledging the same, must declare to the attesting witnesses that the instrument is his will;

4. There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will, at the testator's request, and in his presence;

5. A witness to a written will must write, with his name, his place of residence; and

6. A person who subscribes a testator's name by his direction must write his own name as a witness to the will. A violation of this subsection does not affect the validity of the will." N.D.R.C.1943.

▪ The 1952 family agreement is not a valid joint and mutual will because it was not executed in accordance with the effective statute controlling the execution of wills. Wendelin and Rosa Kuhn never declared to attesting witnesses that the family agreement was their will, as required by § 56–0302, subsection 3, N.D.R.C.1943. In addition, the children who signed the family agreement were listed as parties to the agreement, not as attesting witnesses to a will. Furthermore, during oral argument John's attorney conceded that the family agreement probably was not a valid will. *See In re Lyons' Estate*, 79 N.D. 595, 58 N.W.2d 845 (1963); and *In re Baur's Estate*, 79 N.D. 113, 54 N.W.2d 891 (1952).

We conclude that the district court did not err in determining that the 1952 family agreement was not a valid joint and mutual will because it was not executed with the required formalities. We hold that the district court properly denied John's request for a declaratory judgment that the family agreement was a valid joint and mutual will.

The second issue involves John's contention that, even if the family agreement is not a valid joint and mutual will, the agreement constitutes a binding contract to devise property which became irrevocable on the death of Wendelin. John asserts that, because the contract became irrevocable on Wendelin's death, Rosa was precluded from disposing of the property listed in the family agreement in a manner contradictory to the agreement. Therefore, John is attempting to enforce the family agreement as a contract in equity and recover property which was to be given to him pursuant to the family agreement, but which was not devised or bequeathed to him pursuant to Rosa's 1968 will.

▪ According to the majority rule, a person may enter into a contract to devise property or make a will which is enforceable in equity. *See* 1 Bowe-Parker: Page on Wills § 10.1 et seq. (1960); 97 C.J.S. Wills § 1367 (1957); and 79 Am.Jur.2d Wills § 327 et seq. (1975). Frequently contracts to devise property or to make wills involve situations in which a husband and wife agree to dispose of their property pursuant to a common plan. In such a case, spouses usually will contract to give the surviving spouse a life estate in the deceased spouse's estate and, on the death of the surviving spouse, the property of both will be distributed according to their agreed-upon common plan. *See O'Connor v. Immele*, 77 N.D. 346, 43 N.W.2d 649 (1950); and *Torgerson v. Hauge*, 34 N.D. 646, 159 N.W. 6 (1916). The contract to devise property becomes irrevocable on the death of one of the parties. *See O'Connor, supra* 43 N.W.2d at 654; *Smith v. Thompson*, 250 Mich. 302, 230 N.W. 156 (1930); and *Freese v. Freese*, 49 Ill.App.3d 1041, 7 Ill.Dec. 692, 694–695, 364 N.E.2d 983, 985–986 (Ill.1977).

*Smith, supra* 230 N.W. at 157 quoted from *Doyle v. Fischer*, 183 Wis. 599, 198

N.W. 763, 765 (1924), which stated the general rule regarding contracts to make wills, as follows:

"Where an agreement is entered into by two persons, and especially by husband and wife, to make mutual and reciprocal wills disposing of their separate estates pursuant to their mutual agreement, and where mutual and reciprocal wills are made in accordance with that agreement, and where, after the death of one of the agreeing parties, the other takes under the will and accepts the benefits of said agreement, equity will enforce specific performance of said oral agreement and prevent the perpetration of fraud which would result from a breach of the agreement on the part of the one accepting the benefits thereof."

In most cases involving contracts to devise property or to make wills, mutual or reciprocal wills are executed by the parties; one spouse will die; the surviving spouse will revoke his mutual or reciprocal will and execute a different will changing the property distribution; the surviving spouse will die and his second will will be probated; after which a beneficiary under the first will then brings a breach of contract action as a third-party beneficiary to obtain the property which he would have received under the original will. The main issue in such cases usually involves whether or not the spouses' mutual or reciprocal wills were executed pursuant to a binding contract to devise property or to make wills. Proof of the existence of the contract is often difficult because such contracts are frequently oral contracts made between spouses.

In the present case, a family agreement that is alleged to be a binding contract to devise property was executed but no valid mutual or reciprocal wills were executed pursuant to the family agreement.[2] Because there is no proof problem regarding the existence of the alleged contract to devise property, the only issue involves the validity of the contract.[3]

The family agreement was written by Leona Kuhn Hoff in 1952 at the request of her parents, Wendelin and Rosa Kuhn. Testimony at the trial indicated that Wendelin and Rosa executed the instrument in order to avoid family disputes over their estates by agreeing prior to their deaths how their joint and several property would be distributed when they died.

The agreement involved real property and personal property owned by Rosa and Wendelin. Some of the real property was owned by Rosa and Wendelin in joint tenancy, but most of the real property was owned solely by Rosa. Wendelin owned no real property except in joint tenancy with Rosa.

In determining the validity of the family agreement as a contract to devise property, we will consider the case of *Bonczkowski v. Kucharski*, 13 Ill.2d 443, 150 N.E.2d 144 (1958), which involves a similar fact situation. In *Bonczkowski, supra*, a husband and wife executed a document entitled "Last Combined Will and Testament", i. e., a joint and mutual will, to dispose of their joint tenancy property and the separate property owned by each spouse. Although the instrument was held to be invalid as a joint will, the Illinois Supreme Court determined that the instrument was sufficient to establish a contract for the testamentary disposition of the property owned by the parties to the invalid joint will.

The Illinois Court, in *Bonczkowski, supra*, determined that the instrument did not separately dispose of any of the separate estates of the husband and wife. The only valid dispositive article of their will stated as follows, in *Bonczkowski, supra* 150 N.E.2d at 147:

"Third . . . After we both decease, we give, devise and bequeath the

---

2. We have already determined that the family agreement was not the valid joint and mutual will of Wendelin and Rosa Kuhn.

3. This court has held that properly executed family agreements constitute binding contracts. See *Will v. Will*, 249 N.W.2d 227, 230 (N.D. 1976); *Johnson v. Tomlinson*, 160 N.W.2d 49, 53–57 (N.D.1968); *Zimmerman v. Kitzan*, 65 N.W.2d 462, 467 (N.D.1954); 29 A.L.R.3d 155.

rest, residue and remander of our property real, personal and mixed of whatsoever kind and nature, and wheresoever situated to our children or survivors of them. The property real and personal is to be divided in the following manner: . . "

In upholding the validity of the instrument as a binding contract to devise property, the *Bonczkowski* Court stated, *supra* 150 N.E.2d at 151:

"Turning to the instrument itself, the language of the third article is an indication of a predesigned agreement and arrangement, for, by it, the makers treated the property of each, whether jointly or severally owned, as a joint fund which should be shared by the children of each. Such a pooling of interests and then jointly providing for the disposal of the whole fund gives every indication of a mutual compact. . . . "

The Court also stated, in *Bonczkowski, supra* 150 N.E.2d at 149, that, according to the terms of the instrument:

"[The parties] did not purport to create or give any separate estate to each at the death of the other, but treated all their property as a joint fund and devised it to third persons. . . . "

After the Illinois Supreme Court determined that the instrument was a binding contract to dispose of the parties' property, the Court enforced the contract by invalidating a transfer of joint tenancy property from the surviving joint tenant to a third party who was not the authorized beneficiary under the terms of the instrument. The Illinois Court stated, in *Bonczkowski, supra* 150 N.E.2d at 150–151:

"In view of the fact that the real estate described in the third article of the instrument here was owned in joint tenancy, it is apparent that it was the mutual intent of the makers to bind the survivor to . . . [dispose of the property as they had agreed upon] . . .

. . . . . . .

" . . . Both are presumed to have known that title would pass to the surviv-

or who could then dispose of it as he or she saw fit. Yet the parties divested themselves of such right and sought to bind and assure themselves that the survivor would cause their respective children to be the ultimate recipients of the property in equal shares, one half to Mary's child and one half to Anton's children.

The present case is similar to the *Bonczkowski* case in many respects. In *Kuhn,* although the family agreement was found not to be a valid will, a third-party beneficiary under the agreement sought its enforcement as a binding contract; the property distribution was to be made after the death of both the husband and wife; joint tenancy property was involved which would pass by operation of law to the surviving joint tenant; and the family agreement disposed of all of Wendelin and Rosa's property together, rather than disposing of their individual property separately.

■ The district court in the present case determined that the family agreement was not a valid contract because of a failure of consideration. The validity of a contract is a question of law to be decided by the court. *Stetson v. Blue Cross of North Dakota,* 261 N.W.2d 894 (N.D.1978). Therefore, the "clearly erroneous" rule of Rule 52(a), of the North Dakota Rules of Civil Procedure, is not applicable.

In *Overboe v. Overboe,* 160 N.W.2d 650, 653 (N.D.1968), we followed the general rule of contract law that

"Where mutual promises are made, each furnishes a sufficient consideration to support an action on the other. 17 C.J.S. Contracts § 97, p. 781."

■ In the present case, Wendelin and Rosa made mutual promises to dispose of their property in an agreed-upon manner, *i. e.,* the survivor was to dispose of their joint and several property which was listed in the family agreement in the manner mandated by the family agreement. Such agreements have been held to be sufficient consideration in similar cases. *See Bonczkowski, supra* 150 N.E.2d at 150. On the death of one joint tenant, the surviving joint tenant

would have become the sole owner of the joint tenancy property. The Kuhns, however, wished to bind the surviving joint tenant to dispose of the property as they had agreed upon.

The family agreement also purports to distribute certain property that was not owned in joint tenancy. As in *Bonczkowski, supra,* it appears that Wendelin and Rosa treated all of their property as a common fund or a "pooling of interests". The family agreement indicates that all of their property, whether jointly or severally owned, was to be distributed pursuant to the predesigned common plan set forth in the family agreement.

We conclude that Wendelin and Rosa's mutual promises to distribute their joint and several property pursuant to the family agreement constituted adequate consideration. Therefore, we conclude that the family agreement was a legally binding contract to devise property. We further conclude that John, who was a third-party beneficiary of the family agreement contract, has standing to seek the enforcement of the contract which became irrevocable on the death of Wendelin when Rosa obtained the joint tenancy property by right of survivorship and accepted the benefits of the family agreement. *See O'Connor, supra* 43 N.W.2d at 655; and *Torgerson, supra* 159 N.W. at 8.

The final issue involves whether or not John is entitled to specific performance of the family agreement. Specific performance is a proper remedy to enforce contracts to devise property or to make wills. *O'Connor, supra*; and *Torgerson, supra.* However, the defendants-appellees in the present case assert that specific performance was properly denied because such a remedy would require the district court to use its equitable powers in an inequitable manner.

The district court, in essence, made findings of fact that the distribution of property pursuant to the family agreement was fair and equitable in 1952 when the agreement was executed, but was un-

fair and inequitable at the time of trial because land values had substantially increased. The fairness of a contract is to be determined at the time the contract is executed, not when it is to be performed. *See Fiebiger v. Fischer,* 276 N.W.2d 241 (N.D. 1979); and *Peterson v. Olson,* 253 Iowa 469, 112 N.W.2d 874, 882 (1962). The district court's finding of fact that the family agreement was fair and equitable when the agreement was executed in 1952 controls the court's decision regarding the enforcement of the agreement by specific performance, rather than the court's finding that the family agreement distribution is now inequitable due to increased real estate values. We conclude that specific performance cannot be refused on the ground that the distribution pursuant to the family agreement will not result in equal shares to all beneficiaries.

We hold that the 1952 family agreement is a binding contract to devise property. We further hold that John is entitled to specific performance of the family agreement.

The district court's judgment denying John's request that the 1952 family agreement be declared a valid will is affirmed; the district court's determination that the family agreement did not constitute a binding contract to devise property is reversed; and the case is remanded for the distribution of property to John pursuant to the family agreement. Although John is entitled to specific performance of the family agreement, the remainder of Rosa's estate will be distributed pursuant to Rosa's probated will because no other beneficiary of the family agreement has brought a similar breach of contract action against the estate.

ERICKSTAD, C. J., and PEDERSON and VANDE WALLE, JJ., concur.

Because of Justice PAUL M. SAND's disqualification Judge RAY R. FRIEDERICH, Judge of the Second Judicial District, participated in the hearing of this case and the decision rendered on May 11, 1979. Judge FRIEDERICH is now deceased.