**In the Matter of the ESTATE OF Robert W. ERICKSON, Deceased.**

**Civ. No. 10822.**

Supreme Court of North Dakota.

May 22, 1985.

Thomas A. Mayer, of Fleck, Mather, Strutz & Mayer, Bismarck, for appellant Winnifred H. Erickson.

Timothy L. Kingstad, Williston, for appellees William K. Erickson, Frank L. Erickson, Steven Jay Erickson, and Theresa Ann Erickson.

VANDE WALLE, Justice.

Winnifred H. Erickson has appealed from: (1) a February 13, 1984, county court Order of Intestacy and Appointment of Personal Representative in Formal Proceedings; (2) an April 30, 1984, county court Order Approving Distribution and Determining Intestacy Status; and (3) a county court order dated July 30, 1984, denying her motion for a new trial. We affirm.

Robert W. Erickson and Winnifred were married in 1956 and were residents of Washington. This was a second marriage for each and no children were born of this marriage. Robert acquired mineral interests in North Dakota through the final decree of distribution of his father's estate in 1973. In 1974, Robert and Winnifred executed an "Agreement as to Status of Community Property After Death of One

of the Spouses"[1] (hereinafter Agreement) reciting:

## "I.

"That all property of whatsoever nature or description whether real, personal or mixed and wheresoever situated now owned or hereafter acquired by them or either of them shall be considered and is hereby declared to be community property.

## "II.

"That upon the death of either of the aforementioned parties title to all community property as herein defined shall immediately vest in fee simple in the survivor of them."

Robert died on August 7, 1975. He was survived by Winnifred; William and Frank Erickson (born of his first marriage); Steven and Teresa Erickson (children of a deceased son, Richard, born of his first marriage); and two children born of Winnifred's first marriage, Donna Shilliam and Larry Erickson, both of whom Robert had adopted.

On January 10, 1984, William Erickson filed a petition for an adjudication of intestacy and appointment of a personal representative. On February 13, 1984, the county court issued an "Order of Intestacy and Appointment of Personal Representative in Formal Proceedings," in which the court found:

"2. The decedent died intestate; specifically, the Agreement as to Status of Community Property, executed by the decedent and Winnifred H. Erickson, on September 30, 1974, is not a testamentary instrument and has no effect on the

disposition of property having a situs in North Dakota."

The order also decreed who Robert's surviving heirs were and appointed William Erickson personal representative.

On April 30, 1984, William Erickson filed a Petition for Determination of Testacy Status, Settlement and Confirmation of Distribution of an Intestate Estate by Personal Representative, dated April 13, 1984, in which he averred that: (1) he had filed an inventory and appraisement of the estate's North Dakota property; (2) the estate was in a condition to be closed; (3) Robert died intestate, survived by the following heirs, who were entitled to receive the indicated shares of the North Dakota property: Winnifred Erickson (an undivided ½); William Erickson, Donna Shilliam, Larry Erickson, and Frank Erickson (each an undivided ¹⁄₁₀); Steven Erickson and Teresa Erickson (each an undivided ¹⁄₂₀); (4) notice of the hearing resulting in the February 13, 1984, order had been sent to incorrect addresses for two of the heirs; and (5) the estate had been distributed as set forth above.

On April 30, 1984, the county court issued an Order Approving Distribution and Determining Intestacy Status, in which the court found that the estate was in a condition to be closed; again found that Robert died intestate and that the Agreement had no effect on the disposition of property having a situs in North Dakota; and confirmed the distribution of the estate by the personal representative.

On June 28, 1984, Winnifred moved for a new trial, which was denied in an order of July 30, 1984. The court determined that the motion was not timely because it was not filed within 60 days of the February 13, 1984, order. The court also determined

---

1. Washington is a community-property state. Agreements as to status of community property after death of one of the spouses are recognized by statute, as are definitions of separate and community property. See RCW §§ 26.16.010, 26.16.020, 26.16.030, and 26.16.120. For the effects of community property and agreements as to status of community property in the administration of estates, see RCW §§ 11.02.090 and 11.04.015. For the scope and effect of such

agreements, see *In re Estate of Verbeek,* 2 Wash. App. 144, 467 P.2d 178 (1970); *Neeley v. Lockton,* 63 Wash.2d 929, 389 P.2d 909 (1964); and *Volz v. Zang,* 113 Wash. 378, 194 P. 409 (1920).

Because we conclude that the Agreement has no effect on the disposition of Robert's North Dakota real property, we find it unnecessary to determine the Agreement's effect in Washington.

that the February 13, 1984, order was res judicata as to Winnifred because she did not timely appeal from it or move to have it vacated. Winnifred filed this appeal on September 28, 1984.

This appeal raises the following issues: (1) whether or not the appeal was timely; (2) whether or not the county court had subject-matter jurisdiction to determine the effect of the Agreement; and (3) whether or not the Agreement controls the disposition of the North Dakota real property.

William, Frank, Steven, and Teresa Erickson (appellees) assert that Winnifred's appeal should be dismissed because the time for appeal expired on April 13, 1984, which was 60 days from entry of the February 13, 1984, order.

Section 30.1–02–04 (UPC 1–304), N.D. C.C., provides:

"*Practice in court.*—Unless specifically provided to the contrary in this title or unless inconsistent with its provisions, the rules of civil procedure, including the rules concerning vacation of orders and appellate review, govern formal proceedings under this title."

Section 30.1–02–06.1 (UPC 1–308), N.D. C.C., provides:

"*Appeals.* Appellate review, including the right to appellate review, interlocutory appeal, provisions as to time, manner, notice, appeal bond, stays, scope of review, record on appeal, briefs, arguments, and power of the appellate court, is governed by the rules applicable to the appeals to the supreme court in equity cases from the district court, except that in proceedings where jury trial has been had as a matter of right, the rules applicable to the scope of review in jury cases apply."

■ Rule 54(b), N.D.R.Civ.P., is applicable in probate proceedings. *First Trust Co. of North Dakota v. Conway*, 345 N.W.2d 838 (N.D.1984). The February 13, 1984, order was not calculated to finally resolve all claims among all the parties and did not contain "an express determination that there is no just reason for delay and . . . an express direction for the entry of

judgment." Rule 54(b), N.D.R.Civ.P. Thus the order was "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Rule 54(b), N.D.R.Civ.P. The order, therefore, was not final. *Anderson v. State*, 344 N.W.2d 489 (N.D.1984). Without a Rule 54(b) certification, the February 13, 1984, order was not an appealable final order and thus Winnifred's time for appeal did not expire on April 13, 1984. Further, there apparently was no service of the order and Rule 4(a), N.D.R.App.P., requires a notice of appeal to be filed

" 'within sixty days of the *date of the service of notice of entry of the judgment or order appealed from*' [emphasis added]. No notice of entry of the order has been served in this case. Therefore, the time for appeal technically has not yet commenced to run." *In the Matter of Alf J. Bo*, 365 N.W.2d 847, 850 (N.D.1985).

Appellees contend that the order of February 13, 1984, was final, binding and conclusive upon Winnifred; and that Rule 54(b), N.D.R.Civ.P., and rules relating to notices of entry of orders are inapplicable in probate proceedings. We are not persuaded. The order involved was subject to appeal under § 30.1–15–12 (UPC 3–412), N.D.C.C., and appellees have not shown that Rule 54(b), N.D.R.Civ.P., and Rule 4(a), N.D.R.App.P. (previously determined in *Conway, supra*, and *Bo, supra*, to be applicable in probate proceedings), are inconsistent with the provisions of Title 30.1 (UPC), N.D.C.C. See § 30.1–02–04 (UPC 1–304), N.D.C.C.

■ The running of the time for filing an appeal from the order of April 30, 1984, was terminated by Winnifred's timely motion for a new trial. Rule 4(a), N.D.R. App.P. When a motion for a new trial is timely filed, the time for appeal commences to run from service of notice of entry of an order denying the motion for a new trial. Rule 4(a), N.D.R.App.P. Winnifred's appeal was timely and she is not barred from

seeking review of the order of April 30, 1984.

▮ Winnifred cites several cases and legislative reports and memoranda in support of her assertion that county courts have no equity jurisdiction and that the trial court therefore lacked subject-matter "jurisdiction to determine Winnifred's rights under the Agreement and her interest in real property in North Dakota under the Agreement." It is unnecessary for us to decide whether county courts have equity jurisdiction because the court below did not exercise any power unavailable to a court lacking equity jurisdiction.[2] The court merely determined that Robert Erickson died intestate and that the Agreement "is not a testamentary instrument and has no effect on the disposition of property having a situs in North Dakota." That determination is not equivalent to rescission of a document or any other exercise of equitable jurisdiction.

▮ Winnifred asserts that "the county court erred as a matter of law in deciding such Agreement was a nullity." She avers that *Kuhn v. Kuhn*, 281 N.W.2d 230 (N.D. 1979), is controlling and that

> "Although Washington's community property laws do not directly transfer title to real property situated in North Dakota, the survivorship clause of the Agreement (independent of the transmutation of all joint and severally held property into community property), should be given effect in North Dakota by virtue of *Kuhn v. Kuhn, supra.*"

We do not deem *Kuhn* to be controlling. That case involved a "family agreement" to divide and distribute the jointly and severally owned property of two parents, after the deaths of both of them, among their children. The parties to the agreement were the parents and their children. The purpose of the agreement was to avoid family disputes over the parents' estates. The agreement did not purport to create any property interests in either of the par-

ents. It only distributed the parents' property to their children. This court held that the agreement was not a valid joint and mutual will because it was not executed in accordance with the statute controlling the execution of wills. We further held, however, that the agreement was valid as a contract to devise property and that one of the children was entitled to specific performance. The Agreement involved here, which purports to transform any property owned by Robert and Winnifred separately into community property [which it could not do, as North Dakota real property could "not thereby become imbued with the character of community property, North Dakota not being a community property state," *Rozan v. Rozan*, 129 N.W.2d 694, 707 (N.D.1964)], to the exclusion of their heirs, does not fall within the ambit of *Kuhn, supra.* Neither will we extend *Kuhn* so as to render this Agreement a valid contract to devise property. Nor can we give effect to the survivorship clause as a will because it was not executed with the formalities required of a will.

The other "family agreement" or "family settlement" cases relied upon by Winnifred are inapposite. They involved either (1) joint and mutual wills which became irrevocable at the death of one of the parties and were enforceable as contracts to devise property when one party had accepted and received the benefits of the joint will, or (2) agreements by a decedent's heirs, after the decedent's death, to divide property to carry out an intestate decedent's known intent or to settle probate litigation.

Winnifred's reliance upon *Rozan v. Rozan, supra,* is also misplaced. That decision involved a California divorce judgment determining that North Dakota real property was community property because it had been acquired with community-property funds and assets. This court determined that the property was not community property and that the California judgment could not transfer title to the property. We did,

---

**2.** For a discussion concerning the jurisdiction of the county court and the equity jurisdiction of the county court with respect to a constructive trust, see *Binder v. Binder,* 366 N.W.2d 454 (N.D. 1985), released after this case was submitted on oral argument.

however, determine that, because the North Dakota property was acquired with community-property funds, the parties "thereupon became owners in common of these properties, they having contributed equally toward such acquisition." *Rozan v. Rozan, supra,* 129 N.W.2d at 701. We then stated, 129 N.W.2d at 701–702:

"Our statute provides that,

"'When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made.' 59–01–06(4) NDCC.

"The established facts in the instant action conclusively demonstrate that community funds and assets, one-half of which were owned by plaintiff and with her consent were used by Rozan to acquire the North Dakota mineral interests in his name, thus giving rise to a resulting trust pursuant to the statutory presumption whereby Rozan although the nominal owner of record of all such properties, nevertheless, held an undivided one-half of such purchased properties in trust for plaintiff; ... her one-half interest in and to such North Dakota properties resulted from her definite proportionate contribution towards its acquisition." [Citations omitted.]

Winnifred asserts that an implied trust should result in her favor by virtue of *Rozan.* We disagree. Unlike the case in *Rozan* Robert inherited the North Dakota real property at issue. No community funds or assets were used to acquire the property, and Winnifred did not contribute to its acquisition. Thus there is nothing "giving rise to a resulting trust pursuant to the statutory presumption." *Rozan v. Rozan, supra,* 129 N.W.2d at 701.

 Relying on *Mills v. Agrichemical Aviation, Inc.,* 250 N.W.2d 663 (N.D.1977), Winnifred also asserts that her "reasonable expectations" to succeed to all of Robert's

property should be fulfilled.[3] We do not believe that Winnifred could reasonably have expected that inherited North Dakota real property owned by an intestate decedent survived by children would pass to her to the exclusion of the decedent's children because of a Washington community-property agreement that does not imbue North Dakota real property with the character of community property; is not a will because executed without the formalities required of a will; and is not a contract to devise property. The legal effect of a conveyance is determined by the law of the state of the situs of the land. *Rustad v. Rustad,* 61 Wash.2d 176, 377 P.2d 414 (1963); *In re Gulstine's Estate,* 166 Wash. 325, 6 P.2d 628 (1932); 15A Am.Jur.2d, *Community Property* § 13.

Title 30.1 (UPC), N.D.C.C., applies to "property of nonresidents located in this state." Section 30.1–02–01 (UPC 1–301), N.D.C.C. "Any part of the estate of a decedent not effectively disposed of by his will passes to his heirs as prescribed in the following sections of this title." Section 30.1–04–01 (UPC 2–101), N.D.C.C. We conclude that the county court did not err in determining that the Agreement had no effect on the disposition of Robert's North Dakota real property.

The orders appealed from are affirmed.

ERICKSTAD, C.J., LEVINE and MESCHKE, JJ., and PEDERSON, S.J., concur.

PEDERSON, S.J., sitting in place of GIERKE, J., disqualified.

---

**3.** The doctrine of "reasonable expectations" was adopted by only two members of the court in *Mills.* Three justices concurred specially. See 250 N.W.2d 673. As noted in *Nunn v. Equitable* *Life Assur. Society, Etc.,* 272 N.W.2d 780, 786 n. 1 (1978), the members of this court "have disagreed as to the applicability" of the doctrine.