**In the Matter of the ESTATE OF Daniel STUCKLE, Deceased.**

**Marion STUCKLE, Petitioner and Appellant,**

v.

**Douglas J. STUCKLE, individually and as Personal Representative of the Daniel Stuckle Estate, Bonnie McPherson and LuEtta Bleibaum, Respondents and Appellees.**

**Civ. No. 870375.**

Supreme Court of North Dakota.

June 28, 1988.

Joseph F. Larson II (argued), Jamestown, for petitioner and appellant.

Gilje, Greenwood & Dalsted, Jamestown, for respondents and appellees; argued by Charles J. Gilje.

GIERKE, Justice.

Marion Stuckle appeals from county court judgments denying several of her claims in probate against the estate of her husband, Daniel Stuckle. We dismiss the appeal.

The requirements of Rule 54(b), N.D.R. Civ.P., are fully applicable in probate proceedings. *Matter of Estate of Erickson,* 368 N.W.2d 525, 528 (N.D.1985). In *Matter of Estate of Sorensen,* 406 N.W.2d 365 (N.D.1987), we said:

"Under North Dakota Century Code § 30.1–02–06.1 [U.P.C. 1–308], the right to appellate review of probate orders is governed by the rules applicable to appeals to the Supreme Court in equity cases from the district court. Section 28–27–02, NDCC, specifies which orders

are appealable to this Court. Once jurisdiction is established under § 28-27-02, NDCC, Rule 54(b)'s separate requirements must also be met, if applicable. *Gillan v. Saffell*, 395 N.W.2d 148, 149 (N.D.1986). Parties in probate cases bear the duty of requesting a Rule 54(b) order or certification if they seek an appeal. *First Trust Co. of North Dakota v. Conway*, 345 N.W.2d 838, 842 (N.D. 1984)."

The parties have acknowledged that Daniel's estate has not been closed and that Marion has additional claims against the estate which remain pending before the county court. There is nothing in the record certified to this court which can be construed as a Rule 54(b), N.D.R.Civ.P., certification. *Compare First Trust Co. of North Dakota v. Conway, supra*, 345 N.W.2d at 841-842.

Accordingly, the appeal is dismissed.

ERICKSTAD, C.J., and VANDE WALLE and LEVINE, JJ., concur.

MESCHKE, Justice, concurring.

I concur. I write separately to evaluate for myself the functions of Rule 54(b) and final decisions in appeals, particularly of probate proceedings. Perhaps my review will aid others.

Daniel Stuckle died on July 4, 1984, devising his estate to his widow, Marion, and three children by a prior marriage. His son, Douglas, was named personal representative of his estate.

Daniel had sold the east half of section 3 to Douglas in 1979 and willed a "life estate in the balance due in that certain contract for deed" to Marion. In July 1986, Marion sued Douglas in district court for principal and interest overdue on that contract.

In October 1986, Marion petitioned for a family allowance from the estate and to compel settlement of the estate. In March 1987, Douglas petitioned the county court to construe the will, to approve his accounting, and to settle and distribute the estate. Marion then petitioned to remove Douglas as personal representative for cause and to disallow certain of his expenses. In his return to Marion's last petitions, Douglas filed another accounting.

After an April 1987 hearing, the county court made a series of rulings:

(1) Payments of both principal and interest on the contract for deed on the east half of section 3, which were delinquent at the time of Daniel's death, belonged to the estate;

(2) Installments of principal due on that contract after Daniel's death "shall be placed in trust" for Marion, while interest installments, as well as "interest and profits" from the trust, belonged to Marion;

(3) Marion's testamentary life estate in the north half of section 9 was subject to Daniel's right under the will "to purchase from my estate all or any part of the farm land which I may own at the time of my death for an amount equal to 80% of the appreciated value thereof on reasonable terms," so that, if Daniel purchased, the proceeds would also be placed in trust for income to Marion;

(4) Marion "did not show a need for family allowance," and was awarded only $10 per month for 12 months;

(5) Marion's motion for a stay of "determination of the amount owed under the contract for deed," pending her prior district court action, was denied, but the county court did not determine the amount due, nor did it order settlement or distribution of the estate; and

(6) Daniel was removed as personal representative.

Marion has appealed from each of these rulings except the removal of Daniel as personal representative. Marion also complains about the failures of the county court to set aside her exempt property entitlement under NDCC 30.1-07-01 and to decide whether she or the estate was entitled to crop share rental from the north half of section 9 during administration of the estate.

NDRCivP 54(b) says:

*"Judgment Upon Multiple Claims or Involving Multiple Parties.* If more than one claim for relief is presented in

an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or if multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of that determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties does not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

When our civil rules were adapted from the Federal Rules of Civil Procedure in 1957, Rule 54(b) was imported to our practice, largely in its present form, applicable to both multiple claims and multiple parties.[1] So designed, Rule 54(b) gives a trial court considerable power to decide what is a final order in each case and what is an order that the trial court may later revise in the course of that case. Rule 54(b) reflected the long-standing federal jurisprudence generally requiring a final judgment or order for an appeal.[2] Thus, unher-

1. Federal Rule 54(b) did not expressly apply to multiple parties until amended in 1961. Since then, our Rule 54(b) has been virtually identical to the federal version.

2. The Notes of the Advisory Committee on Rules, accompanying 1946 and 1961 Amendments to Rule 54 of the Federal Rules of Civil Procedure, convey how Rule 54(b) correlates with the general need for a final decision for an appeal in the federal courts:

"1946 AMENDMENT

*"Note.* The historic rule in the federal courts has always prohibited piecemeal disposal of litigation and permitted appeals only from final judgments except in those special instances covered by statute. [citations omitted]. Rule 54(b) was originally adopted in view of the wide scope and possible content of the newly created 'civil action' in order to avoid the possible injustice of a delay in judgment of a distinctly separate claim to await adjudication of the entire case. It was not designed to overturn the settled federal rule stated above, which, indeed, has more recently been reiterated in [citations omitted].

"Unfortunately, this was not always understood, and some confusion ensued. Hence situations arose where district courts made a piecemeal disposition of an action and entered what the parties thought amounted to a judgment, although a trial remained to be had on other claims similar or identical with those disposed of. In the interim the parties did not know their ultimate rights, and accordingly took an appeal, thus putting the finality of the partial judgment in question. While most appellate courts have reached a result generally in accord with the intent of the rule, yet there have been divergent precedents and division of views which have served to render the issues more clouded to the parties appellant. It hardly seems a case where multiplicity of precedents will tend to remove the problem from debate.

*  *  *  *  *  *

"In view of the difficulty thus disclosed, the Advisory Committee in its two preliminary drafts of proposed amendments attempted to redefine the original rule with particular stress upon the interlocutory nature of partial judgments which did not adjudicate all claims arising out of a single transaction or occurrence. This attempt appeared to meet with almost universal approval from those of the profession commenting upon it, although there were, of course, helpful suggestions for additional changes in language or clarification of detail. But cf. Circuit Judge Frank's dissenting opinion in [citation omitted]. The Committee, however, became convinced on careful study of its own proposals that the seeds of ambiguity still remained, and that it had not completely solved the problem of piecemeal appeals. After extended consideration, it concluded that a retention of the older federal rule was desirable and that this rule needed only the exercise of a discretionary power to afford a remedy in the infrequent harsh case to provide a simple, definite, workable rule. This is afforded by amended Rule 54(b). It re-establishes an ancient policy with clarity and precision. For the possibility of staying execution where not all claims are disposed of under Rule 54(b), see amended Rule 62(h).

"1961 AMENDMENT

"This rule permitting appeal, upon the trial court's determination of 'no just reason for delay,' from a judgment upon one or more but less than all the claims in an action, has generally been given a sympathetic construction by the courts and its validity is settled. [citations omitted].

"A serious difficulty has, however, arisen because the rule speaks of claims but nowhere mentions parties. A line of cases has developed in the circuits consistently holding the rule to be inapplicable to the dismissal,

alded, and unnoticed for nearly a decade,[3] Rule 54(b) annexed most of the federal doctrine of "final decisions"[4] to our haphazard scheme of "reviewable orders."[5]

The federal doctrine, generally allowing appeal of only a "final decision," has been statutorily fixed for many years. 28 U.S.C. § 1291; 9 Moore's Federal Practice ¶ 110.06 (1987). North Dakota has not usually had a comparable statutory imprint. Our appeals statute, NDCC 28–27–02, derived from the "Field Code of Procedure," has long spoken only in terms of appealable orders, without expressly referring to final judgments.[6] Today, only sub-

even with the requisite trial court determination, of one or more but less than all defendants jointly charged in an action; i.e. charged with various forms of concerted or related wrongdoing or related liability. [citations omitted]. For purposes of Rule 54(b) it was arguable that there were as many 'claims' as there were parties defendant and that the rule in its present text applied where less than all of the parties were dismissed, [citations omitted]; but the Courts of Appeals are now committed to an opposite view.

"The danger of hardship through delay of appeal until the whole action is concluded may be at least as serious in the multiple-parties situations as in multiple-claims cases, [citation omitted], and courts and commentators have urged that Rule 54(b) be changed to take in the former. [citations omitted]. The amendment accomplishes this purpose by referring explicitly to parties." Fed.R.Civ.P. 54 Note on Amendments (West Publishing 1987).

3. *Compare Kack v. Kack,* 142 N.W.2d 754 (N.D. 1966), with *Granger v. Deaconess Hospital of Grand Forks,* 138 N.W.2d 443 (N.D.1965), which ruled on an appeal of an order striking an affirmative defense, but rejected appeal of two other orders on discovery and evidence as interlocutory. *Granger* did not mention Rule 54(b).

4. In *Mitzel v. Schatz,* 167 N.W.2d 519 (N.D. 1968), then Justice Erickstad explained the connection of Rule 54(b) to the federal doctrine of a final decision for an appeal, and, at 524, summarized:

"Rule 54(a) states that a judgment includes a decree and any order from which an appeal lies. This rule superseded N.D.R.C.1943 § 28–0901, which defined a judgment as the final determination of the rights of the parties in an action. Notwithstanding that § 28–0901 was superseded and that our rules of civil procedure do not define a decree, we are convinced that only those judgments and decrees which constitute a final determination of the rights of the parties to the action and those orders enumerated in N.D.C.C. § 28–27–02 are appealable.

"The right to appeal from a state district court order to the state supreme court is governed by statute (N.D.C.C. § 28–27–02); the right to appeal from federal district court decisions to the federal courts of appeals is governed by statute (28 U.S.C.A. § 1291)."

5. *See* Note, *The "Reviewable Orders" Statute of North Dakota,* 28 N.D.L.Rev. 186 (1952) (LaVern C. Neff): "Few provisions of the North Dakota statutes are more complicated, confusing, antiquated and ambiguous than the sections dealing with the appealability of judicial orders."

6. Although the source note to NDCC 28–27–02 indicates it originated in S.L. 1889, ch. 20, § 23, its antecedents reach back further. As long ago as Laws, Territory of Dakota (1867), the seventh legislative assembly of the territory provided that:

"... The supreme court shall have exclusive jurisdiction to review upon appeal every actual determination hereafter made at any regular or special terms of the district courts of this Territory, in the following cases and no other:

"1. In a judgment in an action commenced therein or brought there from another court, and upon the appeal from such judgment, to review any intermediate order involving the merits, and necessarily affecting the judgment;

"2. In an order affecting a substantial right, made in such action, when such an order in effect determines the action, and prevents a judgment from which an appeal might be taken, and when such order grants or refuses a new trial; but no appeal to the supreme court from an order granting a new trial shall be effectual for any purpose, unless the notice of appeal contain an assent on the part of the appellant that, if the order be affirmed, judgment absolute shall be rendered against the appellant. Upon every appeal from an order granting a new trial, if the supreme court shall determine that no error was committed in granting the new trial, they shall render judgment absolute upon the right of the appellant; and after the proceedings are remitted to the court from which the appeal was taken, an assessment of damages or other proceedings to render the judgment effectual, may be there had, in cases where such subsequent proceedings are requisite;

"3. In a final order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment, and upon such appeal to review any intermediate order involving the merits and necessarily affecting the order appealed from;

"4. Whenever the decision of any motion heretofore made, or of any motion hereafter to be made in the District Court of this Territory at a special term thereof, involves the

section 2 of seven categories of appealable orders expressly calls for a "final order." [7] Subsection 1 implies something final, when it authorizes review of an order which "in effect determines the action...." But, at best, North Dakota's statutory tradition about limiting appeals to final decisions has been weak.

Nevertheless, North Dakota has had some tradition against piecemeal appeals. Thus, for example, our first supreme court recognized "... a mere interlocutory order [ ] is not appealable, ..." *Persons v. Simons*, 1 N.D. 243, 245, 46 N.W. 969, 970 (1890).

This loose custom was capricious and vacillating. Appeals were allowed from some kinds of intermediate orders, such as one denying leave to amend an answer, *Hermes v. Markham*, 78 N.D. 268, 49 N.W.2d 238 (1951), or striking an affirmative defense, *La Duke v. E.W. Wylie Co.*, 77 N.D. 592, 44 N.W.2d 204 (1950); but not from others, such as one allowing an amended complaint, *Holobuck v. Schaffner*, 30 N.D. 344, 152 N.W. 660 (1915), or denying a motion to strike a complaint (but reviewing the sufficiency of the complaint, anyway), *Torgerson v. Minneapolis, St. P. & S.S.M. Ry. Co.*, 51 N.D. 745, 200 N.W. 1013 (1924). Appeals were allowed from some kinds of intermediate procedural orders, such as one granting or denying a change of venue, *Robertson Lumber Co. v. Jones*, 13 N.D. 112, 99 N.W. 1082 (1904); but not from others, such as one denying consolidation of two actions, *Swiggum v. Valley Inv. Co.*, 73 N.D. 422, 15 N.W.2d 862 (1944). These examples illustrate that the concept of finality for a civil appeal was not confirmed in North Dakota before the advent of Rule 54(b). Nevertheless, there were occasional flashes of insight before that about the importance of finality to bring about appellate review.[8]

---

constitutionality of any law of this Territory or has been or shall be placed, in the opinion or reason for such decision of the justice making such decision, upon the unconstitutionality of such law, then an appeal shall lie and may be made from such decision or from the order entered, or to be entered upon such decision, to the general term of said supreme court,

*"Provided, however,* That the time for appealing from such decision, or from such order, shall not be extended hereby."

This provision was substantially similar to that recommended by New York's "First Report of the Commissioners on Practice and Pleadings —Code of Procedure," which was first enacted by New York on April 12, 1848, with very little change. *See Chronology of The Development of The David Dudley Field Code*, 27 Cornell L.Q. 238 (1942). *See also* New York Statutes at Large, vol. 5 (1869); Millar, Civil Procedure of the Trial Court in Historical Perspective, p. 53 (1952). This New York system of civil procedure was greatly emulated by other jurisdictions, including Dakota Territory. *Id.* at 54.

The express reference to an appeal from a judgment, in subsection 1 of the statute, was dropped by 1887. *See* Dakota Territory Compiled Laws of 1887, § 5236.

7. NDCC 28–27–02 says:

*"What orders reviewable.*—The following orders when made by the court may be carried to the supreme court:

"1. An order affecting a substantial right made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken;

"2. A final order affecting a substantial right made in special proceedings or upon a summary application in an action after judgment;

"3. An order which grants, refuses, continues, or modifies a provisional remedy; or grants, refuses, modifies, or dissolves an injunction or refuses to modify or dissolve an injunction, whether such injunction was issued in an action or special proceeding or pursuant to the provisions of section 35–22–04, or which sets aside or dismisses a writ of attachment for irregularity;

"4. An order which grants or refuses a new trial or which sustains a demurrer;

"5. An order which involves the merits of an action or some part thereof;

"6. An order for judgment on application therefor on account of the frivolousness of a demurrer, answer, or reply; or

"7. An order made by the district court or judge thereof without notice is not appealable, but an order made by the district court after a hearing is had upon notice which vacates or refuses to set aside an order previously made without notice may be appealed to the supreme court when by the provisions of this chapter an appeal might have been taken from such order so made without notice, had the same been made upon notice."

8. *See,* for example, *Anderson v. Bothum*, 77 N.D. 678, 45 N.W.2d 488, 491 (1950):

"Section 28–2701, R.C. 1943 provides: 'A judgment or order in a civil action or in a special proceeding in any of the district courts may be removed to the supreme court by appeal as provided in this chapter.' Chapter 28–27.

The final decision doctrine seems to have really been vitalized in North Dakota by Rule 54(b) and its correlation with the strong federal tradition.[9] This was rational. The same reasons of effectiveness and efficiency of judicial determination support the policy in this state as elsewhere.[10] Unfortunately, our application of the finality doctrine has been disordered and erratic, even after the complementary function of Rule 54(b) was recognized. *See,* as illustrations of varying results, *Arneson v. City of Fargo,* 303 N.W.2d 515 (N.D.1981) (Justice Pederson, concurring); *Sheets v. Letnes, Marshall and Fiedler,* 311 N.W.2d 175 (N.D.1981); and *Union State Bank v. Woell,* 357 N.W.2d 234 (N.D.1984). In recent years, we have struggled to shape a coherent and sensible approach to the subject. *Compare Keller v. Gama,* 378 N.W. 2d 867 (N.D.1985) and *Geo–Mobile, Inc. v. Dean Bender Chevrolet, Inc.,* 386 N.W.2d 918 (N.D.1986), where we decided appeals from intermediate orders, with *Gillan v. Saffell,* 395 N.W.2d 148 (N.D.1986) and *Gast Construction Company, Inc. v. Brighton Partnership,* 422 N.W.2d 389 (N.D.1988), where we declined appeals, without Rule 54(b) action, when there were unadjudicated claims remaining to be resolved in the trial court.

By now, it should be apparent that the latest decisions are the prevailing doctrine, based, as they are, on better rationale and stronger tradition. Subject to appropriate exceptions, perhaps akin to the federal model,[11] a final decision will generally be required for a civil appeal. Absent the support of a Rule 54(b) finality determination and direction, an intermediate order or judgment leaving claims unadjudicated in the trial court will not normally be considered on appeal.

This look back on the reasons for and traditions of finality as the springboard for appellate review in civil matters brings us to the relationship of Rule 54(b) and final decisions to probate matters.

In 1983, direct appeals from county court to the supreme court were authorized,[12] following the earlier adoption of the constitutional amendment creating a unified judicial system. It then became necessary to interpolate the general principle of finality for an appeal, together with the complementary procedure for "finality" under Rule 54(b), for proceedings under the relatively new Uniform Probate Code, NDCC

While this statute says that a judgment may be removed and does not use the word 'final', certainly, considering the definition of a judgment in Section 28–0901, supra, it must be construed as meaning that only a final judgment may be removed. Our conclusion therefore is that since the judgment from which the appeal in the instant case was taken is not final, no appeal lies therefrom, and consequently, this court has no jurisdiction to hear such an appeal."

9. Another procedure for an interlocutory appeal, introduced by S.L. 1919, ch. 2, and still codified at NDCC ch. 32–24, may have had a reinforcing effect on the thin tradition in North Dakota. *See also* NDRAppP 47.1, "Certification of Questions of Law By State Court." Since Rule 54(b) has come into use, this procedure seems to have slipped into disuse, except occasionally. *See Bellemare v. Gateway Builders, Inc.,* 399 N.W.2d 308 (N.D.1987) and *Trinity Medical Center v. North Dakota Board of Nursing,* 399 N.W.2d 835 (N.D.1987).

10. *See* 9 Moore's Federal Practice ¶ 110.07 (1987); 4 Am.Jur.2d *Appeal and Error* § 50 (1962).

11. For a recent discussion of customary exceptions to the general federal rule that a district court's decision is appealable only when the decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *see Gulfstream Aerospace Corp. v. Mayacamas Corp.,* — U.S. —, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988).

Finality is not always a crystalline concept. *See Budinich v. Becton Dickinson & Co.,* — U.S. —, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), holding that questions about the recoverability or amount of attorneys fees for the litigation do not prevent finality of an order on the merits.

12. NDCC 30.1–02–06.1 (effective July 1, 1983; 1981 N.D.Sess.Laws, ch. 319, § 49 and § 52) says:

"*Appeals.* Appellate review, including the right to appellate review, interlocutory appeal, provisions as to time, manner, notice, appeal bond, stays, scope of review, record on appeal, briefs, arguments, and power of the appellate court, is governed by the rules applicable to the appeals to the supreme court in equity cases from the district court, except that in proceedings where jury trial has been had as a matter of right, the rules applicable to the scope of review in jury cases apply."

Title 30.1, which had become effective July 1, 1975. That process of applying principles about final decisions to probate proceedings, for which there was no precise federal parallel,[13] has hardly been developed and exposed by our prior opinions.

The need for a final judgment or order, without a Rule 54(b) determination and direction, to appeal a probate court matter was initially identified in *First Trust Co. of North Dakota v. Conway*, 345 N.W.2d 838, 842 (N.D.1984), and has been reiterated in several more recent opinions, *Matter of Estate of Erickson*, 368 N.W.2d 525, 528 (N.D.1985), and *Matter of Estate of Sorensen*, 406 N.W.2d 365 (N.D.1987). But, this case differs from those in ways which may be meaningful in view of the uncertain effects on finality of some sections of the Uniform Probate Code.

*Conway*[14] and *Sorensen* each involved "supervised administration." "Supervised administration is a single in rem proceeding to secure complete administration and settlement of a decedent's estate under the continuing authority of the court which extends until entry of an order approving distribution of the estate and discharging the personal representative, or other order terminating the proceeding." NDCC 30.1–16–01. "Interim orders ... may be issued by the court at any time during the pendency of a supervised administration, ..." usually without notice. NDCC 30.1–16–05. *See also* NDCC 30.1–13–04 (a demand for notice can entitle any interested person to notice of any interim order). Without a Rule 54(b) determination and direction, it is plain that an order in a supervised administration cannot be final and appealed until entry of an order approving distribution of the estate. That is what *Conway* and *Sorensen* held.

*Erickson, supra,* held that an order commencing a probate proceeding was not final

or appealable without supporting Rule 54(b) action, but went on to hold that a formal testacy order could be appealed. Our Uniform Probate Code declares a "formal testacy order" to be "final as to all persons with respect to all issues concerning the decedent's estate that the court considered or might have considered incident to its rendition relevant to the question of whether the decedent left a valid will, and to the determination of heirs," subject to certain exceptions; a formal testacy order is also expressly "[s]ubject to appeal." NDCC 30.1–15–12.

In contrast, this Stuckle estate is not a "supervised administration" and no "formal testacy order" is involved in this appeal. The character of an order or judgment in an unsupervised probate proceeding is designated in NDCC 30.1–12–07:

> "*Scope of proceedings—Proceedings independent—Exception.*—Unless supervised administration as described in chapter 30.1–16 is involved, *each proceeding before the court is independent of any other proceeding involving the same estate;* petitions for formal orders of the court may combine various requests for relief in a single proceeding if the orders sought may be *finally* granted without delay. Except as required for proceedings which are particularly described by other sections of chapters 30.1–12 through 30.1–23, no petition is defective because it fails to embrace all matters which might then be the subject of a *final order;* proceedings for probate of wills or adjudications of no will may be combined with proceedings for appointment of personal representatives; and a proceeding for appointment of personal representative is concluded by an order making or declining the appointment." (emphasis supplied).[15]

---

13. *Compare* federal receivership proceedings; 6 Moore's Federal Practice ¶ 54.39 (1988).

14. Although *Conway, supra,* does not disclose that those estates were supervised administrations, a later opinion in the same proceedings clearly identifies that they were supervised administrations. *Matter of Estate of Kjorvestad,* 375 N.W.2d 160 (N.D.1985).

15. The theory of this provision is explained in the accompanying Editorial Board Comment to the Uniform Probate Code:

> "If supervised administration is not requested, persons interested in an estate may use combinations of the formal proceedings (order by judge after notice to persons concerned with the relief sought), informal proceedings (request for the limited response that nonjudicial

This designates finality in an unsupervised probate proceeding as simply a matter of a concluding order on each separate petition. But, when there are multiple petitions about interrelated claims in an unsupervised probate proceeding, some reconciliation of this uncomplicated plan with the current convention of a need for finality remains necessary. Rule 54(b) and its corollary finality doctrine must be reckoned with because the Uniform Probate Code clearly incorporates existing procedural rules governing civil appeals.[16] Considerations of effective and efficient judicial administration of appeals are similarly important in probates as in other civil matters.

On this appeal in the Stuckle estate, we need not delineate every kind of decision in unsupervised probates which might be appealable without a supporting 54(b) determination and direction.[17] We only need to sketch the outlines of this case enough to show that these rulings are incomplete. They do not decide all disputes between Marion and the estate.

In the phrasing of Rule 54(b), it is obvious that these rulings adjudicate "fewer than all of the claims" and do "not terminate the action." Therefore, the rulings are "subject to revision at any time before the entry of judgment adjudicating all the claims" in settlement and distribution of the estate. While the potential of error is readily detectable in these rulings, I concur that, since the county court did not make an express determination that "there is no just reason for delay" and did not expressly direct entry of a separate judgment under NDRCivP 54(b), the rulings to date are not final and this appeal is premature.

We could remand the record, while retaining jurisdiction of the appeal, for the county court to consider making a Rule 54(b) determination and direction. We have done this occasionally. *See Courchene v. Delaney Distributors, Inc.*, 418 N.W.2d 781 (N.D.1988) and 421 N.W.2d 811 (N.D.1988). But that is not appropriate for every appeal of a non-final decision unembellished with an adequate expression that it should be treated as final. Where unsettled issues are evident and are linked to those brought for review, piecemeal appeals should not be encouraged without appropriate reason. More than conservation of judicial energy and elimination of delays is involved. *See* 9 Moore's Federal Practice ¶ 110.07 (1987). Comprehension on appeal is usually improved by thorough development and elaboration at trial of related facts and legal problems. To me, completion of that process seems particularly important for pondering the interactive controversies in this case.[18]

---

personnel of the probate court are authorized to make in response to verified application), and filings provided in the remaining Parts of Article III to secure authority and protection needed to administer the estate. Nothing except self-interest will compel resort to the judge. When resort to the judge is necessary or desirable to resolve a dispute or to gain protection, the scope of the proceeding if not otherwise prescribed by the Code is framed by the petition." NDCC 30.1–12–07.

**16.** *See* NDCC 30.1–02–06.1 in footnote 12, *supra.* And *see* NDCC 30.1–02–04, which says:
"*Practice in court.*—Unless specifically provided to the contrary in this title or unless inconsistent with its provisions, *the rules of civil procedure, including the rules concerning* vacation of orders and *appellate review,* govern formal proceedings under this title." (emphasis supplied).

**17.** For illustrations of probate decrees, judgments and orders recently treated as final and appealable, *see Matter of Estate of Tuntland,* 364 N.W.2d 513 (N.D.1985); *Matter of Estate of Vertin,* 381 N.W.2d 199 (N.D.1986); *Matter of Estate of Frandson,* 383 N.W.2d 807 (N.D.1986); *Matter of Estate of Sorensen,* 411 N.W.2d 362 (N.D. 1987); *Matter of Estate of Nelson,* 419 N.W.2d 915 (N.D.1988); and *Jordan v. Anderson,* 421 N.W.2d 816 (N.D.1988). *See also Dahner v. Daner,* 374 N.W.2d 604 (N.D.1985); *Binder v. Binder,* 366 N.W.2d 454 (N.D.1986); *Matter of Estate of Binder,* 386 N.W.2d 910 (N.D.1986); *Matter of Conservatorship of Gessler,* 419 N.W. 2d 541 (N.D.App.1988).

**18.** A Rule 54(b) determination and direction by a trial court should not be routine. The reasons why there is "no just reason for delay" and the importance to "sound judicial administration" must satisfactorily appear before this court will

entertain piecemeal appeals. *Union State Bank
v. Woell, supra.* That is not to say that we will
ignore an abuse of discretion in refusing Rule
54(b) action in an appropriate case. *Consider
Sheets v. Letnes, Marshall and Fiedler, supra.*